ALLIANCE LIFE INS. CO., (LOVELL v.)
[See Lovell v. Alliance Life Ins. Co., Case No. 8,552.]

## Case No. 247.

### The ALLIGATOR.

#### South Carolina.

## Case No. 248.

### The ALLIGATOR.

#### [1 Gall. 145.][1]

Circuit Court, D. Massachusetts. May Term, 1812.[2]

ADMIRALTY — PRACTICE — DELIVERING PROPERTY ON BAIL—SUMMARY JUDGMENT ON BOND.

1. The district court, by virtue of its general admiralty jurisdiction, may deliver property on bail. Whether the security be taken by bond or stipulation is not material. On such security a summary judgment may be rendered.

[Followed in Nelson v. U. S., Case No. 10,-116.]

[Cited in McLellan v. U. S., Case No. 8,895; U. S. v. Four Part Pieces Woolen Cloth, Id. 15,150; The Ann Caroline v. Wells, 2 Wall. (69 U. S.) 549; U. S. v. Three Hundred Barrels Whiskey, Case No. 16,510; The City of Norwich, Id. 11.202; The Lynchburg, Id. 8,638; The Baltic, Id. 826; The Wanata v. Avery, 95 U. S. 616; U. S. v. Ames, 99 U. S. 41; The G. G. King, 16 Fed. 923.]

[2. Cited in Todd v. The Tulchen, 2 Fed. 603, to the proposition that the sureties cannot take advantage of any irregularity in the proceeding, but should be held to the terms of their obligation.]

[3. Cited in The Sydney, 47 Fed. 262, to the proposition that a bond is to all intents and purposes a stipulation in admiralty, and the liability of the parties is the same, whether the instrument is in the form of a bond or stipulation.]

[In admiralty. Libel for forfeiture against the brig Alligator, (Anthony Langford and others, claimants.) Decree in district court for condemnation. Claimants appeal. Decree affirmed, and judgment on bond given by claimants ordered for appraised value and costs.]

G. Blake, for the United States.
S. Hubbard, for claimants.

Before STORY, Circuit Justice and DAVIS, District Judge.

---

[1][Reported by John Gallison, Esq.]
[2][Affirming an unreported decree of the district court.]

STORY, Circuit Justice. The brig Alligator is libelled, 1. for that on the 15th of Feb. 1810, she sailed from Portsmouth in New-Hampshire, bound to a permitted port, to wit, St. Bartholomews in the West-Indies, without giving bonds pursuant to the 3d section of the act of 28th June, 1809, c. 9. There are other counts, which are not now material to consider. The claim admits the facts stated in the information; but denies, that the brig was originally bound to St. Bartholomews; and declares, that the voyage there was occasioned by inevitable necessity. From the depositions in the case it appears, that the vessel sailed from Portsmouth in New-Hampshire, on the 13th of Feb. 1810, with a clearance and ostensible destination to Norfolk in Virginia. The cargo was extremely well adapted, and is admitted to have had a contingent and ultimate destination for the West-India market. A few days after their departure, heavy gales came on, the brig was greatly strained, and finally disabled from pursuing her voyage; and the crew and captain determined for the preservation of their lives and property, to bear away for some port in the West-Indies, and accordingly arrived at Tobago, on the 14th of March, 1810, where she was examined and repaired in her upper works and bends; from thence she proceeded to St. Vincents, leaking very much during the passage; and here all the lumber was taken out and sold, and the vessel repaired. On the 28th of April, 1810, she sailed for St. Bartholomews, where the residue of her cargo was sold; and she returned from thence to Boston, about the 29th of May, 1810. It appears, that during the gales on the coast, some considerable part of the deck load was thrown overboard; and the vessel is stated to have been consigned to Moses Myers & Son of Norfolk. As in this case, the vessel proceeded to St. Bartholomews, which was a permitted port, the presumption is, that such was her original destination. The proof of the contrary, is necessarily thrown on the claimants, who are bound to make out a clear and decisive case of necessity. I admit, that if the original destination was not to the West-Indies, no subsequent irregularity of conduct can affect the brig under the 3d section of the act of 28th June, 1809, c. 9. But unless strong reasons appear to rebut it, the presumption of such original destination must remain. It will be recollected, that at the time of sailing from Portsmouth, the non-intercourse, as to Great Britain and her dependencies, was generally supposed to have been revived by the president's proclamation of the 9th of August, 1809. This accounts for the omission to give bond; for if the vessel had been really bound for a permitted port, and that only in the West Indies, there could have been no reason to withhold the bond required by law.

The case, as made out on the evidence, presents many improbabilities, and some omissions, which materially affect its purity. I will not say, that these are badges of fraud, but I will say, that they are badges of illegal destination.

1. In the first place, upon examining the log book, as has been stated by an intelligent witness, the brig appears, from the beginning of the voyage, to have held a course for the West-Indies, and not for Norfolk; although, from the winds stated, she might certainly have hugged the coast, and hauled more to the westward.

2. The brig, although in such a forlorn state and utter distress, run down the principal Caribbee islands; yet with her winds and course, she might have reached any of them.

3. No correspondence is produced with Messrs Myers, although in cases of consignments in this country, where the mails pass so rapidly, it is usual in transactions of real business.

4. No particulars of the injuries received by the vessel are given. No survey under the care of intelligent and disinterested men is produced from the West Indies; although this, in ordinary cases, is the invariable custom. Nor is the deficiency supplied by the testimony of respectable merchants at the ports of St. Vincents and Tobago.

5. The testimony comes altogether from interested sources, mingled with the strongest biasses of personal interest; and under circumstances which render it impossible to testify with safety, but on one side. This in ordinary cases would throw a shadow over its current. Nevertheless, unless it were combined with evident improbabilities, I should not feel at liberty to act against the force of its uniform direction.

I cannot but notice also, although it does not govern my opinion, that the decision of the court below, connected this case with that of The Struggle, [Case No. 13,550,] as belonging to the same owners; and that, with a view to defeat that inference, the claimant has obtained leave to vary his claim in this court, and to show other owners. This is a very extraordinary occurrence; and though, so far as counsel are concerned, it has been explained to my entire satisfaction, the claimant himself does not seem so easily to be justified.

A careful examination would present farther grounds for doubt; but as these are peremptory in my mind, I affirm the decree of the district court with costs. Decree affirmed.

After the decree of condemnation in the district court was affirmed in the circuit court, the property having been delivered to the claimants by order of the district court, upon a bond being given to respond the appraised value, in case of final condemnation,—

G. Blake, attorney for the United States, moved for judgment on the bond, and for

execution for the appraised value and costs, and founded his motion: 1. On the act 2 March, 1799, c. 128, § 89, (4 U. S. Laws 429, [1 Stat. 695.]) 2. On the general course of the admiralty in proceedings ·where the property had been delivered on bail.

S. Hubbard for the claimant objected, that the prosecution in this case was grounded on the act of 28th June, 1809, c. 9, [1 Stat. 550,] and therefore there was no foundation for the application under the 89th sect. of the act of 1799. And he further contended, that the court had no authority to deliver the property on bond in a case of this nature; and the circumstance, that statute provisions were made in certain specified cases, showed the non-existence of the authority in all others.

STORY, Circuit Justice. I understand, that in all proper cases of seizure, under whatever statute made, the invariable practice in the district court has been, to take bonds for the property, whenever application has been made by the claimant for this purpose. No doubt has hitherto existed, respecting the right of that court to take such bonds, or to grant judgment and award execution in the summary manner stated in the 89th sect. of the act of 1799, and now moved for on behalf of the United States. That practice I understand has been recognised and sanctioned by my predecessors in this court; and I should not now feel at liberty to disturb upon slight grounds a practice so well settled, whatever might be my own impressions as to its regularity. The practice has ˋbeen of great public convenience, and to claimants in particular, it has been peculiarly beneficial. The present claimant made a voluntary application for a delivery of the property, and obtained it by an order of the court, upon giving a bond to respond the appraised value, according to a practice of the court, of which he could not be ignorant. The effect of that bond he well knew, and he admitted, by his own course of proceeding, that the court might apply its general practice in summary cases to the present. Whether there be any statute existing, which authorized the delivery on bond or not, is not in my judgment material. This cause was a civil cause, of admiralty and maritime jurisdiction, and nothing can be better settled, than that the admiralty may take a fidejussory caution or stipulation in cases in rem, and may in a summary manner award judgment and execution thereon. The district court possessing this jurisdiction, and being fully authorized to adopt the process and ˙modes of proceeding of the admiralty, (Respublica v. Lacaze, 2 Dall. [2 U. S.] 118. See, also, [Brymer v. Atkins,] 1 H. Bl. 164,) had an undoubted right to deliver the property on bail, and to enforce a conformity to the terms of the bailment. In what manner this security is taken, whether by a sealed instrument, or by a stipulation in the nature of a recognizance, cannot affect the jurisdiction of the court. Without doubt, unless a different rule were prescribed by statute, the best course would have been to take an admiralty stipulation. But a bond, even supposing it were void, as such, which is not admitted, might yet be good as a stipulation. In all cases of this nature, the security, whatever may be its form, is taken by order of court upon the voluntary application of the party, and therefore is apud acta. Having jurisdiction of the principal cause, the court must possess jurisdiction over all the incidents, and may by monition, attachment or execution, enforce its decrees against all who become parties to the proceedings. As the district judge concurs in this opinion, let judgment for the appraised value and costs be entered against the parties to the bond. See [Smart v. Wolff,] 3 Term R. 323; [King v. Perry,] 3 Salk. 23; [Brymer v. Atkins,] 1 H. Bl. 164; 2 Brown, Civil & Adm. Law, 96.