RICHARDSON, et al. VS CLEAVELAND & HUGGINS.

*Of proceedings in the nature of admiralty process under the statutes of Alabama.*

1. The statutes of 1824 and 1836, giving a lien, by proceedings in the nature of admiralty process, upon vessels, steam boats &c.—are to be construed in *pari materia*—both containing provisions designed to be operative, and to form one system.
2. The jurisdiction confered upon, and exercised by the County Courts, of this State, under these statutes, is not in violation of the constitution of Alabama.
3. Nor does such jurisdiction conflict with the admiralty and maritime authority, vested by the constitution of the United States, in the national Courts.
4. Where a libel filed under the statutes, alleged that the libelants were *merchants,* that they furnished *stores, provisions, merchandise and materials* to a certain steam boat, naming her, that the amount claimed *was justly due* by the *master and owners,* that the boat was duly *enrolled, registered* and *lisenced,* and that the *articles* were furnished at the *special request of the owners and master of said boat,* and that the articles were furnished at divers times, from the seventh day of January, 1835, to the twentieth day of April, 1836.—It was held, taking the whole libel together—

First—That the description of the personal character of the libelants, and of the vessel, was sufficiently certain to bring the case within the terms of the statute, (above referred to) of 1824.

Secondly—That the expressions, that the materials &c. were furnished *to the steam boat, and at* the special *request of the owners and master,* were equivalent to the assertion, that they were furnished, *for the use of the boat.*

RICHARDSON et al. *vs* CLEAVELAND & HUGGINS.

Thirdly—That the insufficiency of the averment, as to the *time* when the stores &c. were furnished, could be corrected by a reference to the *account*, filed and annexed to the libel.

5. The answer of a respondent to a libel, filed under the statutes, above referred to, *may*, it seems, be required to be made under oath.

6. But in such case, the libel should expressly require the answer to be under oath.

7. And where an answer is made to a libel, which does not require it to be on oath, it is error for a Court to reject the answer, because not sworn to.

8. Cases of this character when tried, should go to the jury, and be tried on evidence, independent of the oaths of the parties, made to the libel or answer.

9. The bond authorised to be taken, under the provisions of either of these statutes, when executed, operates as a discharge of the specific lien acquired upon a vessel by her seizure.

10. Where the stipulation has been entered into in pursuance of these statutes, a condemnation of the vessel, (on final judgment,) cannot be awarded.

This was a petition, in the nature of a libel in admiralty, filed in the County Court of Mobile county.

The libelants, William F. Cleaveland and George Huggins, merchants and co-partners, trading in Mobile, under the name and style of Cleaveland and Huggins, set forth, that they had furnished stores, provisions, merchandise and materials to the steam boat Ophelia, to the value of fifteen hundred and five dollars, and eighty-eight cents; that the amount of their account, for the articles furnished by them, was justly due to them, by the owners and master of said boat, and had never been paid.

That the steam boat was commanded by Sardine G. Stone, that she was duly enrolled, registered and licensed; that she had been employed in navigating the rivers of Mobile bay, and that the articles were furnished at the special request of the owners and master of said boat, at Mobile, and at divers times, from the seventh day of January, in the year one thousand, eight hundred and thirty-five, to the twentieth day of April, in the year one thousand, eight hundred and thirty-six, *as per the account then there filed.* That the said boat was about to leave the port of Mobile, and that neither the owners nor master resided there.

And they prayed process for the seizure of said vessel, in the nature of admiralty process, according to the form of the statute, in such case made and provided,—so that the said vessel might be answerable for said debt, and be condemned for the payment of the said sum of fifteen hundred and five dollars and eighty-eighty cents, and all costs.

The libel was verified by the affidavit of George Huggins: and the Judge of the County Court ordered the process to issue.

The boat having been attached by the sheriff, John Richardson, Edward Sims and Rucker Redding entered into a bond, payable to the libelants, and conditioned to be void, if the said John Richardson should well and truly answer the demand aforesaid.

At June term, eighteen hundred and thirty-six, of the County Court, *Gayle* and *Vandegraaf*, attornies of said Court, as *amici curiæ*, appeared, and moved the Court to quash the libel aforesaid, and

to dismiss the whole proceedings, upon the ground of want of jurisdiction in said Court; and because the proceedings were unauthorised by any statute of the State.—Which motion being overruled, and it appearing that said John Richardson was the owner of said boat,—he filed his answer, denying the material allegations of the petition.

It was then objected, that the answer was *not sworn to*, and upon this objection, it was *rejected* by the Court.

It being then agreed to dispense with a jury, the case was submitted to the Court. The entry stated that the libelants proved, to the "satisfaction of the Court, that the said account was correct, and that the said merchandise in said account mentioned, was furnished by the plaintiffs, who were merchants, at the request, and upon the order of the master of the said steam boat, at Mobile, and for the use of the said boat, which was navigating the waters of Mobile bay, and the rivers of the State: but inasmuch as it appeared to the Court, that a part of the said goods, amounting to the sum of four hundred and eighty-one dollars and seventy-two cents, were furnished before the first day of January, eighteen hundred and thirty-six, and that said boat did perform trips after the delivery thereof,—it is considered by the Court, that the plaintiffs have no lien on the said boat for that amount, although the same appears to be due: but for all merchandise, furnished to said boat after the first day of January eighteen hundred and thirty-six, and which amounts to the sum of one thousand and twenty-four dollars, and sixteen cents, the plaintiffs have

a lien on said boat, and that she is liable to con-demnation for said amount: It is therefore ordered, adjudged and decreed, that the said steam boat, Ophelia, her tackle, apparel, engine and furniture, be liable, and she is condemned for the payment of said sum, and the costs of this proceeding. And it appearing to the Court, that said John Richard-son, as owner of said boat, has entered into stipu-lation, with Edward Sims and Rucker Redding, se-curities, by means whereof the said steam boat has been released, so that she cannot now be had for the purpose of sale, under the condemnation afore-said,—it is therefore ordered, adjudged and decreed, that the said John Richardson, Edward Sims and Rucker Redding, do pay the said sum of one thou-sand and twenty-four dollars and sixteen cents, and the costs of this suit; and that the said libelants have execution thereof against them."

A writ of error having been sued out from this Court, it was assigned in error, that the Court be-low erred,—

First—In not quashing the libel.

Second—In not receiving the answer of respon-dent.

Third—In giving judgment against the sureties in the replevy bond.

Fourth—In condemning the boat, her tackle, &c. for the debt.

*Gayle* and *Vandegraaf* for the plaintiffs in error.
*Stewart* and *Thornton*, contra.

GOLDTHWAITE, J.—Cleaveland and Hug-gins, filed a petition in the County Court of Mobile

county, alledging, "they had furnished stores, provisions, merchandise and materials, to the steam boat Ophelia, to the value of fifteen hundred and five dollars and eighty-eight cents, that the amount of their account for these articles, furnished by them, is justly due them by the owners and master of the said boat and has never been paid."

They further represent, "that the steam boat is commanded by Sardine G. Stone, that she is, as they believe, duly enrolled, registered and licensed, that she has been employed in navigating the rivers of Mobile bay; that the said articles were furnished at the special request of the owners and master of said boat, at Mobile, and at divers times, from the seventh day of January, in the year eighteen hundred and thirty-five, to the twentieth of April, in the year eighteen hundred and thirty-six, as per the account now filed. And further, they represent, "that the said boat is about to leave the port of Mobile; and that neither the master or owners reside in Mobile."

The petition prays process to issue for the seizure of the said boat, in the nature of admiralty process, according to the form of the statute in such case made and provided, so that the said vessel be made answerable for the payment of the debt so due, and all costs.

The facts stated in the petition, were verified, by the affidavit of one of the petitioners, and the Judge of said Court by his fiat, directed admiralty process to issue, according to the prayer of the petition, returnable to the second Monday of June, eighteen hundred and thirty-six. Process was is-

sued against the boat, her *tackel, apparel and fur-niture,* which were seized by the sheriff, and releas-ed by him on the order of the clerk of said Court, that bond had been given according to law.

On the fifth of May, eighteen hundred and thirty-six, John Richardson, Edward Sims and Rucker Redding, entered into bond, payable to the plain-tiffs, in the sum of three thousand dollars,—the con-dition of which recites, "that whereas Cleaveland and Huggins, had filed in the County Court of Mo-bile county, process in the nature of a libel, in ad-miralty proceedings, against the steam boat Ophe-lia, of which said John Richardson is owner, for goods, wares and merchandise, and supplies, fur-nished by them to said boat, to the amount of fif-teen hundred and five dollars and eighty-eight cents. Now, if the said John Richardson, shall well and truly, answer the demand so filed as aforesaid, then this *obligation to be void.*"

A citation and monition to all persons, pretend-ing to have an interest in the said boat, was is-sued, but no return appears on the record.

On the twenty-third day of June, eighteen hun-dred and thirty-six, an appearance was made in the following terms: "Came the plaintiffs by their attorneys, and also came John Richardson, profess-ing to be owner and proprietor of said steam boat, Ophelia," who moved the Court by his attorneys, "to quash the libel aforesaid, and to dismiss the whole proceedings, upon the ground of a want of jurisdiction in the Court, and because the proceed-ings were unauthorised by any statute of the State."

5 P. 33

The motion was overruled, and Richardson then making it appear to the satisfaction of the Court, that he was the owner of the steam boat Ophelia, offered to file an answer to the libel, in writing, which he then produced, denying most of the allegations: This answer, was on motion of the libelants, rejected, for the reason that it was not verefied by the oath of the claimant. The Court then proceeded to determine the cause, without the intervention of a jury, this course being agreed to by the claimants and libelants,—and awarded the sum of one thousand and twenty-five dollars and sixteen cents, to the libelants, decreeing that they had a lien on the boat for that sum, and condemned the said boat, her tackle, apparel, engine and furniture, for the payment of the said sum and the costs of suit. The Court also, after reciting that Richardson, as the owner of said boat, had entered into stipulation with Sims and Redding as sureties, by means whereof the boat had been released, so that she could not then be had, for the purpose of sale, under the condemnation, aforesaid, proceeded to decree, that Richardson, Sims and Redding, pay the said sum so ascertained to be due, and the costs of suit, and that the libelants should have execution against them.

To reverse this judgment, Richardson, Sims and Redding, have sued out a writ of error to this Court, and have assigned the following as reasons for a reversal.

1st. The Court erred in not quashing the libel.

2nd. In not receiving the answer of Richardson.

RICHARDSON, et al. *vs* CLEAVELAND & HUGGINS.

3d. In rendering judgment against the securities in the replevy bond, and—

4th. In condemning the boat, her tackle, &c. for the debt.

On the first assignment of error, the constitutionality of the acts of the legislature conferring jurisdiction on the County Court, to proceed in cases of this nature, has been drawn in question, as well as the technical accuracy of these proceedings, under those acts. The questions will be separately examined.

1. The acts of eighteen hundred and twenty-four,[*] and that of eighteen hundred and thirty-six,[†] are the only enactments on which the libelants rest their cause, and in order correctly to understand the points which are raised, it may be necessary to recite so much of them as bear on the case.

<span style="float:right">*Aik. Dig. 390.<br>†1b. 604.<br>2 Ed.</span>

The first section of the act of eighteen hundred and twenty-four, provides, that all ships, vessels, steam boats and other registered, enrolled or licensed craft, built, repaired, fitted or furnished, within this State, are hereby declared to be liable and chargeable, for all debts contracted by the owners, masters or consignees thereof, for, or by reason of any work done, or materials or supplies found, provided or furnished, by any merchant, trader, ship-builder, mechanic or workman, for, upon or concerning the building, repairing, fitting, furnishing, supplying, or equipping such, ship, vessel, steam boat, or other craft, in preference to any other debts due, and owing from the owners thereof.

Section 2. Provides, that, "it shall be lawful for all and every of the said merchants, traders, ship_

builders, mechanics and workmen, to file process in the nature of a libel, in admiralty proceedings, in the Circuit and County Courts of this State, against such ship, vessel, steam boat, or other craft, her tackle, apparel and furniture: whereupon process shall issue, and such proceedings shall be had, towards the recovery of such debts, as are usually had in the Courts of admiralty, for the recovery of mariner's wages, and other debts actually contracted, upon the high seas."

Section 3. Provides, "that all the description of persons named in the proceeding sections, may join in one action, and that all suits against the ship, &c. may be consolidated, and one definitive judgment given, comprehending all the debts, &c. which shall be demanded, supported either by process or petition, while one or more of such suits are pending.

Section 4. Provides, "if the master or owner, or his or their agent or attorney, will enter into stipulation or bond, with sufficient securites, to answer all the demands which shall be filed against the ship, &c. the same shall be released and discharged from such lien."

Section 5. Provides, that "no ships, &c. shall continue to be liable for such debts, longer than the time which shall intervene, between the contracting of such debts, and the time of her proceeding on her voyage next after such debts may be contracted."

Section 6. Provides, "that all issues at the request of either party, shall be tried by a jury; and all such issues shall be made up by the parties un-

RICHARDSON, et al. *vs* CLEAVELAND & HUGGINS.

der the direction of the Court,—the clerks of the said Courts to have the same power in vacation, as is exercised by the clerks of the Circuit and District Courts of the United States, and shall take the bonds or stipulations as aforesaid, which shall not be void for want of form, but shall be proceeded on and recovered, according to the plain intent and meaning thereof."

The act of eighteen hundred and thirty-six, extends the lien on steam boats or other water craft, to any person who shall furnish materials, labour or stores for the use of any steam boat, &c. within the State of Alabama, on the order or by the direction of the master or clerk of the same; but provides, that if the lien shall not be enforced, on or before the first day of July next, ensuing, the furnishing of the materials, labor or stores, such lien shall cease to exist. The mode of enforcing the lien shall be before any Court having jurisdiction of the amount, and shall be in the nature of a libel, &c. and on an order of seizure, the boat, &c. to be taken; but the claimants of such boat may replevy, on entering into a bond with sufficient security, to pay such judgment as may be rendered on such libel—and the lien is further extended to all goods, &c. received as freight and not delivered.

The objections which have been urged to the jurisdiction thus professed to be given, are founded on the first and eighth sections of the fifth article of the constitution, and the twenty-eighth section of the first article.

If the two statutes are to be construed in *pari materia*, any objection based on the twenty-eighth

section of the bill of rights, must necessarily fall to the ground, as the right of trial by jury, is expressly saved at the instance of either party, by the sixth section of the act of eighteen hundred and twenty-four, and it will become necessary to inquire, what is the true meaning of this clause in the constitution, or how far applicable to cases of this and the like character: that such is the construction universally given to statutes on the same subject matter, is a rule too well settled, now to be questioned; and the Court entertains no doubt, but that the rule is properly applicable here. The acts certainly do not contain dissimilar or repugnant provisions. The last does not attempt or profess to repeal the former, and we can arrive at no other conclusion than that both were intended to be operative and to form together one system.

The first section of the fifth article, provides that the judicial power of this State, shall be vested in one Supreme Court, Circuit Courts to be held in each county in the State, and such inferior Courts of law and equity, as the General Assembly may from time to time direct, ordain and establish.

The eighth section, that the General Assembly, shall have power, to establish a Court or Courts of Chancery, with original and appelate equity jurisdiction: and until the establishment of the said Court or Courts, the said jurisdiction shall be vested in the Judges of the Circuit Courts, respectively.

It is urged that a Court, whose proceedings are according to the course of admiralty practice, must in consequence of the form of proceeding, become

RICHARDSON, et al. *vs* CLEAVELAND & HUGGINS.

a Court of Chancery, within the meaning of the eighth section before recited, and that such powers cannot be exercised by any other than the Circuit Courts, until the creation of a separate Court of Chancery. Admitting the *proceedings* in admiralty and equity causes to be similar, it does not follow but that the *jurisdictions* are entirely distinct and variant. To illustrate the distinction between the jurisdiction, let it be supposed that money has been advanced on a valid contract, and a bottomry bond agreed to be given on a vessel—the admiralty would have no jurisdiction *before* the bottomry was forfeited, and equity none *afterwards*; but yet a specific performance of the contract, could be decreed in equity, compelled by its process of attachment, and the admiralty would have jurisdiction alone, after the specific execution of the bond of bottomry was thus compelled.—*Andrews vs Essex Ins. Co.*\* So without doubt, Courts of law might be invested with power to call on the parties to make disclosures of the facts of the case on oath, yet the character of the proceedings would not be changed, by the means which were used to elicit the truth. Admiralty as well as the law must be bound by fixed and certain rules, which admit of little or no variation; but "equity is that wherein the law by reason of its universality is deficient." It may relieve against cases of accident, surprise, confidence abused, trust violated, and undue influence exercised; but the cases are few, if any, in which these, or similar considerations, can influence either a Court of law or admiralty in

\*3 Mason 6.

arriving at its judgment on the facts presented, and the relief against them would still have to be sought in the proper forum, a Court of Chancery.

But it is said that by the second section of the third article of the Constitution of the United States, "*all* admiralty and maritime jurisdiction is vested in the Courts of the United States, and it is contended that this jurisdiction must be exclusive. It is sufficient to say that such a construction has never obtained within our knowledge, and the ablest commentators on constitutional law have held the jurisdiction of the State Courts to be concurrent in all cases, arising within the body of a county.—*Danes et al. vs Newbrig.**

*Gilpin's R. 474.

We have therefore no difficulty in arriving at the conclusion, that the legislature has the constitutional power to confer this jurisdiction on the County Court.

The technical accuracy of the libel, and its conformity with or variance from, the statutory enactments, next demand our consideration.

It is alleged, that the libelants are *merchants* in Mobile, that they furnished, stores, provisions, merchandise and materials to the steam boat Ophelia : that the amount of their account is justly due to them by the master and owners of said boat : that the boat is duly enrolled, registered and licensed : that she has been employed in navigating the rivers of Mobile bay : that the articles were furnished at the special request of the owners and master of said boat at Mobile, and at divers times, from the seventh day of January, eighteen hundred and thirty-

five, to the twentieth day of April, eighteen hun-
dred and thirty-six: that the boat is about to leave
Mobile, and that neither the owners nor master re-
side there.

The description of the personal character of the
libelants, is sufficiently averred, as well as the de-
scription of the vessel, to bring the libel within the
terms of the first statute, which would alone be ne-
cessary to meet such cases, as are not covered
by the latter. So likewise are the articles alleged
to have been furnished, (or at least some of them,)
within the words used by both acts; but there is
some difficulty in reconciling the libel with another
important requisition of the statute of eighteen hun-
dred and thirty-six, which makes it necessary to
create a lien, that the stores, &c. should be furnish-
ed *for the use* of the boat; nor can it be said that
there is any allegation in the libel, which *distinctly*
avers, that the *materials* were furnished for the
*building, repairing, fitting, furnishing or equipping*,
or that the stores were furnished *for supplying*, the
steam boat, so as to bring the case within the words
of the act of eighteen hundred and twenty-four:
yet the expression used that the materials, &c.
were furnished *to the* steam boat, and at the special
request of the owners and master, would seem to
be equivalent to the assertion, that they were fur-
nished for the use of the boat;—we therefore incline
to the opinion, that taking the whole libel togeth-
er, no other inference can be drawn from it, than
this, that the stores and materials were furnished

5 P. 34

for the use of the steam boat, at the request of, and consequently, by the direction of the master.

The only remaining point in relation to the form of the libel, is the allegation respecting the time when the stores, &c. were furnished. Without a reference to the account which is set out in the record, and contains items of charges, during each month of the year eighteen hundred and thirty-six, anterior to the time when the libel was filed, the allegation would be insufficient, as it would not appear from the statement made, that all the articles were not furnished in eighteen hundred and thirty-five, after the boat had left the port, by which the lien would have been divested; or that they were not furnished previous to the ninth of January, eighteen hundred and thirty-six, in which case the lien under the act of eighteen hundred and twenty-four, would never have attached, but as by a reference to the account, this is made certain, we consider the libel as sufficient.

2. The next assignment of error which will be considered, is, that which embraces the refusal of the Court, to receive the answer of Richardson to the libel, unless sworn to.

It will be seen by a reference to so much of the libel as contains the prayer, that the parties interested, are not required to answer on oath, nor have any interrogatories been propounded to the libelants. By the general rules of admiralty practice, the answer *may* be required to be on oath.* This practice is incorrect and unsafe, according to *Dunlap*, unless in the opinion of the libelant or his proc-

*2 Bro. Civ. & Adm. law 416 Dunlap's Ad. prac. 207.

RICHARDSON, et al. vs CLEAVELAND & HUGGINS.

tor, it may be necessary to resort to the conscience of the respondent, in order to substantiate the case; for the answer being required to be on oath, and being so made, might by the *general course* of admiralty proceedings, be required to be disproved by two witnesses, (though under our statute, the rule would be different.)[*]  (See also the opinion of Chief Justice *Marshal*, in the case of the *Matilda*.[†])  As the libelants in this case, did not think proper to require the answer of the respondent to be on oath, they had no right to have it rejected for the want of verification.  The act of eighteen hundred and twenty-four, contemplates, that the trial of all issues shall be had before a jury, at the instance of either party, and on such trial, as in all other cases of jury trials, the evidence in the cause would be submitted to it, independent of the oaths of the parties.

[*] Dunlap's prac. 121–122–123.

[†] 14 Hall's Law Jour. 488.

For this error, the judgment must be reversed, and the cause remanded, but as the other questions presented on the record are properly raised, and as the practice in cases of this nature, is new in this State, we deem it not improper to express our opinions in relation to them.

3. It is assigned as error, that the Court erred in rendering judgment against the sureties on the replevy bond.

It will be perceived on a reference to the statutes, that the conditions which are prescribed for the bonds, are not in all respects similar, and from this supposed variance, it was at first thought that the legislature might have intended to create a dif-

ference in the effect to be given to them : but we are satisfied that on a bond being taken under either statute, the specific lien on the boat seized, is discharged, and that it was the intention to substitute the bond in lieu of it. Thus the condition required by the act of eighteen hundred and twenty-four, is "to answer all demands which shall be filed;" that of eighteen hundred and thirty-six, "to pay such judgment as shall be rendered on said libel."

The act of eighteen hundred and twenty-four, prescribing that the proceedings shall be according to the course of admiralty, it only remains to inquire whether this is the uniform course in Courts of admiralty. It is believed to be without exception that all stipulations, or bonds in the nature of a stipulation, are considered as the thing itself, and judgment is rendered against the stipulators, or *fidei jussores* in the first instance.* Neither is the form essential, although prescribed by statute, if the same effect is intended by the one actually entered into.†

*The Palmyra 12. Wheat 1.

†The Struggle 1. Gall 476.

This practice is convenient, and it in all cases furnishes a remedy, which it is just should be advanced in such a manner, as to attain the ends of justice with as little delay and expense as practicable; and when it is considered, that the judgment on the bond, is at all times within the discretion of the Court, no difficulty it is presumed, can arise from an improper exercise of it.

4. The condemnation of the boat, after a stipulation had been entered into, and the lien thereby discharged, was erroneous, for the libelants would,

by such judgment, have two remedies, when one alone was contemplated by the act; it is true that the judgment of condemnation in this case might not operate so as to divest any rights, acquired after the giving of the bond, but as it was clearly irregular, the judgment, would for this cause, have been reversed, if such had not already been the result produced by the second assignment.