Rouse & Marsh v. Jayne, use, &c.

---

## ROUSE & MARSH v. JAYNE, USE, &c.

1. The statute of 1841, authorizing the replevy of a boat seized under admiralty process. is not a repeal of the act of 1836, on the same subject. The latter act authorizing *all persons* to intervene, as claimants ; whilst the act of 1841 provides the mode in which the *owner* may obtain possession of the boat.

Rouse & Marsh v. Jayne, use, &c.

2. The sheriff may take bond, with condition to deliver the boat, on the first day of the term, and if then delivered, the sheriff is not required to retain the boat in his custody, but may receive a new stipulation, and re-deliver the boat.

3. The stipulators cannot object, that by the condition of their bond, it might be discharged, either by the payment of the judgment, or the return of the boat.

4. The rendition of a judgment against the stipulator, is an incident to the principal cause, though the bond may not be in conformity with the statute, if it is good as a common-law obligation.

Error to the County Court of Mobile.

THE defendant in error commenced a suit by libel against the steamboat Norfolk. The sheriff seized the boat in virtue of the writ, and released it upon a bond being executed by Augustin E. Rouse, the master, with surety, upon condition that the bond should be void, if the obligors delivered the boat to the sheriff on the first Monday of July, 1845, or pay and satisfy such judgment as should be rendered in said libel suit.

The sheriff returned the seizure of the boat, the execution of the above described bond, and that the boat had been delivered to him pursuant to the condition. He further returned, that on the 7th July, 1845, he took a bond for the forthcoming of the boat on the 3d Monday of July, 1845, which bond he returns.

The bond so returned was executed by A. E. Rouse, and Jacob S. Marsh, the plaintiffs in error, payable to the plaintiff in the suit, conditioned to be void, if they returned the boat to the sheriff on the third Monday of July, 1845, or paid and satisfied such judgment as should be rendered on the libel.

At the November term, 1845, of the county court of Mobile, the court rendered judgment in favor of the plaintiff, for $298 94, and condemned the steamboat, her tackle, &c., for the payment of the same; and reciting that the plaintiffs in error had entered into a stipulation for the forthcoming of the boat, ordered and decreed, that execution be issued against them for the payment of the judgment, and costs.

This decree is now assigned as error.

P. PHILLIPS and O. S. JEWETT, for plaintiff in error.

1. No judgment could be rendered against the plaintiff in error, because the bond taken by the sheriff was different from that prescribed by statute, viz: 1. There were two conditions to the bond taken, whereas the statute prescribes but one. 2. The boat was not replevied by the owner, but by strangers. 3. The bond was taken by the sheriff without an order of court. 4. The bond was taken at a time when the sheriff had no power to take any bond. Clay's Dig. 140, § 28.

2. If the bond taken by the sheriff was good, it might be enforced at common law, but not in this summary manner—it was not a stipulation. Sewall v. Franklin et al, 2 Porter, 493; Johnson v. Merriwether, 3 Call, 454; Hooe v. Tebbs, 1 Munf. 500.

3. If this was a stipulation, and the bond differed from that prescribed by statute, the county court of Mobile county could not enforce it by giving judgment against the plaintiffs as stipulators—for that court does not exercise admiralty jurisdiction; but merely in enforcing the liens given by statute against boats, proceeds in the manner of an admiralty court. It is by virtue of its general admiralty jurisdiction, that the federal district court can deliver property on bail. 1 Gallison's R. 145; Sewall v. Franklin et al. 2 Porter, 502; 2 Dal. 118.

J. F. ADAMS, contra.

The meaning of the statute, requiring the condition of the bond to be, the delivery "within the time required by the act," is not, as we think, before the first day of the court, but within ten days after the rising of the court, within which he is to sell.

There seems to be no objection on principle, to the taking of a second bond, after a surrender on the first. *Non constat* but that Rouse, and Marsh, were given by the owner, as his securities. It might not be necessary for the owner to sign the bond himself. And moreover, *non constat* but that Rouse was the owner. A precise conformity of the bond to the statute not necessary. 8 Ala. 527.

92

COLLIER, C. J.—By a statute passed in 1836, a lien is given to persons furnishing materials, &c., for the use of any steamboat, &c., to the owner or consignee of goods, &c., received on a steamboat, &c., and not delivered, and the mode of enforcing such lien shall be by proceeding in the nature of a *libel* against such steamboat, &c., in any court having jurisdiction of the amount due; "on which the clerk of the court shall issue an order of seizure, directed to the sheriff, or other officer of said court, who shall thereupon seize the said boat, her tackle, apparel and furniture; but the claimants of such boat may replevy, on entering into a bond with sufficient security to pay such judgment as shall be rendered on said libel; and a trial shall be had at the first term after such boat is seized." Clay's Dig. 139, § 22 to 24. In 1841, an amendatory act was passed upon the same subject, which declares that the previous enactment was applicable to justices of the peace, and that they were invested with jurisdiction in such cases where the amount in controversy did not exceed fifty dollars. *Further*, the judges of the county court may, and the judge of the county court shall hold his court, on the first and third Mondays of each month, for the settlement of all cases of libels, over fifty dollars, sued out against steamboats, &c. Upon a judgment being obtained in such case either before the county court or a justice of the peace, execution may forthwith issue, and the steamboat, &c., shall be sold to the highest bidder by the sheriff or constable charged with the process, on giving ten days notice. The next section prescribes the duty of the officer in paying over the money collected, and the mode of proceeding against him for a default. It also contains two *provisos*—1. That the libellant shall, previous to the institution of his suit make a demand of the amount due him. 2. "That the owner or owners of any steamboat, or other water craft, shall have the privilege of replevying such property, by paying the sum claimed, or by giving security for the delivery of said property, within the time prescribed by this act." Clay's Dig. 140, § 26 to 28.

1. We have seen that the act of 1836, in general terms, provides, that the claimants of the boat seized may replevy, and that the condition of the stipulation shall be to pay the

judgment that may be rendered on the libel; while the proviso we have quoted gives to the owner of the boat the privilege of replevying, by paying the sum claimed by the libellant, or by giving security for the delivery of the boat, &c. The first question which presents itself is, whether the proviso in the last statute is an implied repeal of the former, in respect to the replevy of the boat. It will be observed, that the act of 1836 authorizes *all persons*, who may intervene as *claimants*, to enter into stipulation, and thus replevy while the statute of 1841 merely provides the mode in which the *owner* may obtain possession of the boat. The two enactments do not then, in this respect, conflict with each other —the one applying to all persons who may intervene, and the other to owners only, without any inhibition of the right to replevy by others. Thus we see that the two statutes may stand together, and that there is an ample field for the operation of each. *Besides*, it is an acknowledged rule, that the repeal of a statute by implication is not to be favored, and its propriety is obvious, when we observe how loosely and inconsiderately many of our legislative acts are drawn. This latter remark is applicable to the statute of 1841, which authorizes the replevy of the boat, not only upon giving security for its delivery, but upon the payment of the sum claimed by the libel, as if the latter right did not exist independent of legislation.

The first act does not contemplate a stipulation, conditioned to return the boat, but " to pay such judgment as shall be rendered on the libel ;" and if the libellant is successful in his suit, a decree may be rendered against the stipulators. But the subsequent enactment requires security " for the delivery of the property within the time prescribed by the act," and yet omits to prescribe any time. Perhaps the defectiveness of the statute might be supplied by requiring the delivery of the boat to answer such decree as might be rendered in the cause, within a definite time after the rendition of the decree, so as to supersede the necessity of a demand. But if a stipulation is entered into in another form, which imposes no other duty than the statutes contemplate, we should be unwilling to hold that no summary judgment could be rendered on it; the more especially as in proceedings according to

the course of the admiralty, the greatest liberality consistent with the prompt administration of justice, is always tolerated.

The act of 1841 provides, that the judge of the county court of Mobile shall hold his court on the first and third Monday in every month, for the trial of libels. Now as the statute is silent in respect to the time when the return of a boat which has been replevied shall be stipulated for, we can perceive no objection, for the designation of the first day of the next term of the court, in the stipulation; and if it is then returned, we know no reason why the sheriff may not receive a new stipulation, without detaining it in his own custody, at the expense, and to the injury of one or both the litigants. In the case before us, the second, like the first stipulation, requires the return of the boat at the term succeeding its date. Whether the libellants could not object that the form of the stipulation should have been different, we need not consider; for however this may be, such an objection will not be allowed to come from the stipulators.

Nor can it avail the stipulators, that the condition of their stipulation does not conform to either of the statutes, as it does not impose a greater obligation than the act of 1836 provides—in fact is more beneficial to them. That enactment only allows a boat which has been libelled to be replevied by bond with sufficient surety, to pay such judgment as shall be rendered, &c. But the stipulation before us is not so stringent, for it provides an alternative condition, upon the performance of which the stipulators might relieve themselves from the payment of that judgment; that is, the return of the boat upon the day appointed. Until that day the stipulators might have discharged themselves by performing the alternative; but afterwards it ceased to be operative, and their stipulation became absolute, or rather depended upon no other contingency than the recovery of the libellant.

In Bell and Casey v. Thomas, 8 Ala. Rep. 528, we said, "It is not important to inquire whether the bond taken is in precise conformity with that required by statute, for if it was variant from that, and could only be supported as a common law obligation, yet it is within the jurisdiction of a court pro-

ceeding according to the course of admiralty practice, to render judgment on such an obligation, as an incident to the principal cause. The Alligator, 1 Gall. 145." We need not, in the present case, go as far as this—for we have seen that the stipulation, after the failure of the stipulators to avail themselves of the privilege of returning the boat, made their undertaking such as the statute provides, and that term in the condition being beneficial to them, did not affect the character of the obligation.

It results from what has been said, that the decree of the county court is in conformity to law, and it is therefore affirmed.