## MURPHY *vs.* ROBERTS & STAPLES.

[LIBEL IN ADMIRALTY AGAINST STEAMBOAT.]

1. *Lien on steamboat for work and labor.*—A lien on a steamboat, for work and labor done in getting her afloat, after having been run aground, is given by the act of 1836, but not by the act of 1824.—Clay's Digest, 139, § 22; *Ib.* 537, § 5.

2. *Stipulators cannot object to irregularities in sentence of condemnation.*—Where the court had jurisdiction of the libel, and rendered a decree for the sale and condemnation of the boat, the stipulators cannot complain, on error, of any irregularity in the proceedings against the boat.

3. *Proceedings governed by admiralty practice.*—The remedy given against steamboats, by the act of 1836, is to be governed by the rules of admiralty practice.

4. *Liability of stipulators.*—Where the bond of the stipulators is conditioned, in the alternative, for the payment of the judgment which may be rendered "at the next term of the court," or for the forthcoming and delivery of the boat to answer the sentence and decree of the court, it binds them for the performance of the condition on the final disposition of the cause, although the judgment may be delayed; nor can they claim to be discharged, on account of the informality in the condition of the bond; nor are they entitled to notice before the rendition of judgment against them; but it is erroneous to render judgment against them, on the bond, at the same time the judgment of condemnation is rendered against the boat.

APPEAL from the Circuit Court of Montgomery. Tried before the Hon. JOHN GILL SHORTER.

THE proceedings in this case were instituted by the appellees, who libeled the steamboat *Pink Toney*, for work and labor performed by them, at the instance of the captain and master, in getting the said boat afloat from the wharf at Montgomery, where she had been left aground by a sudden fall in the river. The sheriff having taken the boat into his possession, under the writ of seizure, thereupon the appellants, as stipulators, entered into bond, conditioned as follows: "Now, therefore, if the said Alexander Guy and James N. Martin shall well and truly pay all the debt, damages and costs which may be decreed and awarded by said court, at the next term thereof, to which said writ is returnable; or shall have forthcoming, and well and truly deliver, said steamboat, her tackle, apparel, and furniture, to answer such decree, sentence and judgment as may be rendered against her by said court; then, and in either of these events, this obligation to be void," &c. After several continuances, the court rendered a judgment of condemnation against the boat, ordering her sale; and, at the same time, rendered a judgment against the stipulators on the bond. The rendition of the judgment against the stipulators is now assigned as error.

WATTS, JUDGE & JACKSON, and GOLDTHWAITE & SEMPLE, for appellants.

JNO. A. ELMORE, and E. Y. FAIR, *contra*.

STONE, J.—We do not think the act of 1824 justified the libel in this case. We hold, however, that it was clearly authorized by the act of 1836.—Clay's Digest, 139, §§ 22, 23. The demand sued for was for *labor for the use of a steamboat;* and it is thus brought within the very letter of the statute.

We do not understand the appellants as controverting the correctness of the sentence, condemning to sale the steamboat, her tackle, apparel and furniture. Under the authorities, they could not be heard to question the *regu-*

*larity* of that sentence.—See them referred to on the briefs of counsel. It is not our intention to decide that they might not make the objection, if the statute conferred on the circuit court no jurisdiction over the claim sued for. See Schooner Louisiana v. Fettyplace, 21 Ala. 286. As we have shown, the court had jurisdiction; and the appellants cannot question the regularity of the proceedings or judgment against the steamboat. Their rights are limited to the judgment against themselves.

It is argued for the stipulators, that this is a purely statutory proceeding; and that, as the act of 1836 does not in terms declare that the remedy therein provided shall be governed by the rules of admiralty practice, we cannot travel beyond the letter of the statute. We do not so understand the statute. The first section gives a lien in favor of "any person who shall furnish materials, labor or stores, for the use of any steamboat," &c. The second section declares, that "the mode of enforcing such lien shall be before any court having jurisdiction of the amount due, and shall be in the nature of a *libel* against such steamboat, or other water craft, on which the clerk of the court shall issue an order of seizure," &c. Now, the process of libel, and the proceedings under it here indicated, are precisely those of the courts of admiralty; and they are the process and proceedings of no other court known to our system.—Dunlap's Admiralty Pr. 111, 132; Richardson v. Cleveland, 5 Porter, 251. If we hold that this statute does not contemplate proceedings in admiralty, we are forced to declare that the legislature intended to engraft upon our common-law system of pleading the *libel* of the civil law. How we are to apply it; to what particular common-law action it is to be accommodated; or whether it is introductive of a new action, we are left to conjecture. The act of 1841 (Clay's Digest, pp. 139–40, §§ 26, 27) is a legislative exposition of the intention of the act of 1836, and proves to our minds, conclusively, that the act of 1836 intended to apply the admiralty practice to the remedies thereby created. In this construction, we think we only adopt the views which our predecessors more than intimated in Rouse v. Jayne, 14 Ala. 727; and Bell v. Thomas, 8 Ala. 527.

It is further urged for appellants, that the judgment against them should be reversed, first, because the bond only required them to pay such judgment as should be rendered at the next term of the court, when in fact no judgment was rendered at that term; second, because the condition of the bond does not conform to the statute.

The act of 1836 commands that the "trial shall be had at the first term after such boat is seized." The object was, to secure a speedy remedy in these cases. It could not have been to force the parties to trial, whether they had had time to prepare for trial or not. Suppose there should be, for some cause, a failure to hold the court, would this defeat the action? We think this clause of the statute was only intended as a declaration that the case should stand for trial at the next term; and a failure to try at that term, would not have the effect of defeating the action. The bond was drawn with reference to this provision of the statute. We think the plain intention of the parties was, that the stipulators should pay whatever judgment should be rendered in the premises; the parties believing that the trial would come off at the next term.

If the question were an open one, we should feel inclined to hold, that the bond in this case was a mere common-law obligation, on which the court could rightfully render no summary judgment. The bond required by the statute is "to pay such judgment as shall be rendered." The bond given was to pay the judgment, or to "have forthcoming, and well and truly deliver, said steamboat," &c., "to answer such decree, sentence and judgment as may be rendered against her."

The admiralty practice in the United States is intended to be simple and summary.—Dunlap's Admiralty Pr. 79, 80; Rouse & Marsh v. Jayne, *supra*; The Brig Alligator, 1 Gall. 145. Much liberality is indulged to advance the remedy. In Bell & Casey v. Thomas, 8 Ala. 528, this court holds the following strong language: "It is not important to inquire whether the bond taken is in precise conformity with that required by statute; for, if it was variant from that, and could only be supported as a

common-law obligation, yet it is within the jurisdiction of a court, proceeding according to the course of admiralty practice, to render judgment on such an obligation, as an incident to the principal cause." In the case of Rouse v. Jayne, *supra*, the bond was alternate, and in substance the same as the bond in this case. This court then said it could not "avail the stipulators that the condition of their stipulation did not conform to either of the statutes, [1836 and 1841,] as it did not impose a greater obligation than the act of 1836 ; in fact, was more beneficial to them."

These adjudications have become rules of practice in this State ; and, under their authority, we hold, that the stipulation in this case is binding on the stipulators, and that upon it, the circuit court can, at the proper time, render a summary judgment against them.—Dunlap's Admiralty Pr. 163-4.

The judgment against the stipulators in this case was premature. The legal effect of their bond was, that they would have the steamboat, her tackle, apparel and furniture, forthcoming for the payment of such judgment as should be rendered in the cause, or that they would pay the judgment themselves. They had the option of doing the one or the other, and they were under no obligation to do either, until judgment of condemnation was rendered against the boat.

In the case of Bell & Casey v. Thomas, *supra*, this same question arose ; and because the court rendered judgment against the stipulators at the same time at which the judgment of condemnation was pronounced against the steamboat, the judgment was reversed.

In Rouse v. Jayne, *supra*, the judgment against the boat, and the judgment against the stipulators, were rendered at the same term, and this court affirmed the judgment.

In the case last cited, the bond required the stipulators to deliver the boat in July, and the judgment was not rendered until November. The time within which they were permitted to deliver the boat, in discharge of their liability, had passed ; and their obligation to pay the money became absolute. We suppose this is the ground

on which the decision in the latter case was different from the former one. This view will reconcile the two cases. Otherwise, they are in conflict.

The judgment should not have been rendered against the stipulators, until they were placed in default, by a failure to deliver the property which their bond required them to deliver. The circuit court could not safely anticipate their failure to comply; and hence should not have pronounced a prospective judgment against them.

If the stipulators fail to deliver said steamboat, &c., to the officer having execution, for the sale thereof, their liability for the judgment will become fixed; and the fact being duly made known to the circuit court, judgment may be rendered against them for the amount of the judgment against the boat.

By executing the bond, the stipulators acknowledge themselves in court, and are presumed to be cognizant of all subsequent proceedings in the cause. They are not entitled to notice that a judgment against them will be moved for.

The judgment of the circuit court against Martin and Murphy is reversed. If the libellants choose, let them proceed to fix the liability of the appellants according to the principles of this opinion.

RICE, C. J., having been of counsel, not sitting.