## Case No. 10,151.

### The NEW ENGLAND.

[3 Sumn. 495;¹ 2 Law Rep. 71.]

Circuit Court, D. New Hampshire. May Term, 1839.

PRACTICE IN ADMIRALTY—APPEAL—TO NEXT TERM —ENTRY—INTERLOCUTORY DECREE—WHAT IS FINAL DECREE IN SALVAGE CASES — REHEARING —ENROLLMENT OF DECREE.

1. No appeal lies from a decree of the district court in an admiralty cause, except to the next term of the circuit court.

2. The appeal. to be effectual. must be entered before the adjournment sine die, of the district court, unless a different time is specially allowed by the district court in the peculiar case. or is prescribed by the general rules of the court.
[Cited in Noe v. U. S., Case No. 10,286.]
[Cited in The Zephyr v. Brown, 2 Wash. T. 44. 3 Pac. 187.]
[See In re Dupee. Case No. 4,183.]

3. If in either case an appeal is entered within the prescribed term. it relates back to the time of the decree, although actually entered in vacation.

4. A party may appeal from an interlocutory decree. having the effect of a final decree; or he may. at his election. wait until the final decree is positively entered, and then may enter an appeal.

5. A decree awarding a certain rate of salvage of the proceeds. after deducting charges and expenses. and fees of court. is not a final decree; but at most is only an interlocutory decree, in the nature of a final decree.

6. To make a decree in a salvage case positively final, all the charges and expenses should be ascertained, and the salvage apportioned. and the rights of each salvor definitely fixed, so that he may appeal therefrom, if he chooses.

7. Quaere, whether a libel of review. in the nature of a bill of review in equity, will lie in a court of admiralty.
[Cited in U. S. v. The Glamorgan. Case No. 15,214; The Illinois. Id. 7,003; Jackson v. Munks, 58 Fed. 599.]

8. A rehearing in admiralty cannot be had after the term of the court has passed at which the decree was made.
[Cited in U. S. v. The Glamorgan. Case No. 15,214; Doggett v. Emerson. Id. 3,961; The Caithneshire, Id. 2,294: Sloman v. Wyssman, Id. 12,955a; The Illinois, Id. 7,003; Jackson v. Munks, 58 Fed. 599.]
[See The Avery, Case No. 672.]

9. All decrees in admiralty are deemed to be enrolled as of the term in which they are made.
[Cited in U. S. v. The Glamorgan, Case No. 15,214.]

[Appeal] from the district court of the United States for the district of New Hampshire.]

This was a suit in rem for salvage brought [by the Kennebeck & Boston Steam Navigation Company] against the steamboat New England; upon which a decree for salvage was rendered by the district court at the September term, 1838. [Case unreported.] But it was ascertained, after the final adjournment of the court, that by a mistake of the time, nature, and operation of the decree, the benefit intended by it to the salvors was wholly defeated. and they were actually burthened · with expenses beyond the salvage awarded to them. The morning after the final adjournment of the court the mistake was ascertained, and an application was made to the district judge, whose decree had been supposed to be perfectly satisfactory, to allow an appeal to be entered upon the records of the court, in order to have the error corrected in the circuit court. The minutes. only of the decree had been stated by the court while in session. and the decree was not drawn out in form until the morning· after the final adjournment. The district judge, doubting his authority to allow an appeal, except when applied for and allowed in open court, declined to allow the appeal. The libellants, notwithstanding, entered the cause, as upon an appeal to the circuit court, at the next term (October term. 1838); and at the same term, by motion, they made an application to the circuit court to direct the clerk of the district court to enter the appeal

---

¹ [Reported by Charles Sumner, Esq.]

upon the records of that court, and the allowance of it, due security having been offered to be filed. This motion stood over for argument and consideration until the present May term of the circuit court; and was now argued by Mr. Claggett for all the libellants, except John Hodgkins, and supported by affidavits.

In the intermediate time, viz., at the December term, 1838. of the district court, all proceedings under the original decree having been suspended, a petition in the nature of a libel for a rehearing. or of a libel of review, was filed by John Hodgkins in behalf of himself and the other libellants, before that court; and upon the hearing and argument by counsel, the district judge dismissed the petition upon the ground, that the court had no jurisdiction. [Case unreported.] From this decree of dismissal an appeal was taken to the circuit court.

Mr. Hale. Dist. Atty., for appellants.
Mr. Emery and E. Cutts, for appellees.

STORY, Circuit Justice. The present case presents some points, which have not been hitherto decided in this court, and have some novelty both in their principle and application. I have, therefore, taken time to consider the case with reference to the different forms, in which these points have been brought before the court. I have no doubt whatsoever, if the district .court, in a case of admiralty and maritime jurisdiction refuses to entertain the cause, or to pronounce a decree, or to allow an appeal from a decree, when interposed according to the rules prescribed by the court, or justified by the general principles of the admiralty practice. recognised in the courts of the United States, that this court has a jurisdiction by mandamus to compel the district court to proceed in the cause, to enter a decree (not prescribing what that decree shall be), or to allow an appeal upon the proper requisitions of the law being complied with by the party. By the 14th section of the judiciary act of 1789, c. 20 [1 Stat. 73]; all the courts of the United States are clothed with "power to issue writs of scire facias, habeas corpus, and all other writs not specially provided by statute, which may be necessary for the exercise of their respective jurisdictions, and agreeable to the principles and usages of law." Now, the acts above specified may be essential to the proper exercise of the appellate jurisdiction of this court over the district courts, and a mandamus is the proper process to effect the objects, and is agreeable to the principles and usages of law, when they are to be attained. My Brother, Mr. Justice Thompson. held this doctrine in the case of Smith v. Jackson [Case No. 13,064], and I entirely subscribe to his opinion on this subject.

By the act of 1789 (chapter 20, § 21), an appeal is allowed from final decrees of the district court in causes of admiralty and maritime jurisdiction, where the matter in dispute exceeds the sum or value of three hundred dollars (since that time altered to fifty dollars), exclusive of costs; but the appeal is allowed only to the next circuit court to be held in the district. In what mode and at what time the appeal is to be made, is not pointed out by the statute. By the civil law, and also by the general practice. of the admiralty courts of England, the appeal may be made viva voce in open court, or in writing apud acta at the time of the pronouncing the decree, or within ten days afterwards in writing before a notary, who authenticates the instrument of appeal. 2 Browne, Civ. & Adm. Law, 435, 437; Norton v. Rich [Case No. 10,352]. In America, this practice has not to my knowledge ever been adopted. See Norton v. Rich [supra]; [Glass v. The Betsey] 3 Dall. [3 U. S.] 6, note. The uniform course, as far as I know, has been to interpose the appeal during the term or sitting of the district court, at which the decree passed, and before its final adjournment, or to interpose it within some stipulated period after the term or sitting, fixed by the general rules of the court, or specially prescribed and allowed by the court in the particular case, upon the motion of the party aggrieved. And, in each of these cases, if the appeal is taken within the prescribed period, it is entered upon the record of the proceedings, apud acta, by the clerk of the court; and when entered, it takes effect in the same manner by relation back, as if entered in open court upon the record, when the sentence was pronounced. If no appeal is taken in either of these ways within the proper period, and the district court is adjourned without day, then it is understood, that the party waives any appeal, and the court proceeds to execute its decree; and no appeal subsequently taken by the party, even if offered or entered before the next term of the circuit court, is understood to possess any validity; but it is treated as a mere nullity. Such, at least, has been the invariable practice in this circuit; and it was fully recognised and enforced. in the case of Norton v. Rich [supra]. And it appears to me, that the practice is settled upon true principles; for, otherwise, the execution of the decree of the district court would be suspended until after the next circuit court, or the objects of the appeal might be in a great measure defeated by the total or partial execution of it. Be this as it may, I have no doubt whatsoever of the authority of the district court to prescribe by its rules the term, wherein appeals shall be entered, and that the parties would be bound by the limitations prescribed by those rules.

In the present case the motion for a mandamus to direct the clerk to enter the appeal, as allowed by the district judge, is founded upon a total mistake of the true state of the facts. and the remedial justice, to which the libellants would be entitled. There is no proof whatever, that the district judge al-

lowed the appeal on the morning after the final adjournment of the court, or at any time afterwards. He disclaims it in open court; and we have the fullest authority, that he never gave any directions to the clerk to enter or allow the appeal, and that he never approved any bond or security offered by the libellants for the purpose of obtaining an appeal. If the libellants were entitled to have the appeal allowed, and entered after the adjournment of court upon the application made the next morning, or at any time afterwards before the next term of the circuit court, and the district judge refused it, the proper application should have been by a petition to this court for a mandamus to be addressed to him (and not to the clerk), to allow the appeal. The whole proceeding, on the part of the libellants, has been in this respect as irregular and incorrect as it well could be.

But, waiving all minor considerations of this sort, the real and substantial question before the court is, whether the district judge had authority to allow the appeal after the final adjournment of the court, supposing the claim to have been made, while the court was in session, to have such an appeal entered, or a reasonable time allowed for perfecting it. As a general question, supposing the decree to have been drawn out at large, and fully enrolled or entered upon the records of the court, I have no doubt, upon the authority of Norton v. Rich, and upon the prinples above stated, that he had no such authority. And whatever might be the mistake of the libellants, as to the nature and operation of the decree, it would have been final and obligatory upon them in this form of seeking redress. There could be no appeal; and the mode of redress must have been, if any, by another proceeding, by a libel of review, in the nature of a bill of review, or in the nature of a rehearing, which I shall presently have occasion to consider.

But I understand it to be admitted on all sides at the argument, that the decree of the district judge was not, in fact, drawn out, or entered upon the records, before the final adjournment of the court; that he merely expressed the heads and grounds of his opinion; and that the decree was afterwards formally drawn up and entered upon the records as of the term, in conformity to his minutes and by his express sanction. It seems to me, that, until a formal decree was entered, the party was not bound to enter any appeal. He was not bound by the mere minutes; but was at liberty to apply to the district judge to vary his minutes and correct any errors, before the final entry of the formal decree. Nor can I entertain any doubt, that the district judge was, under such circumstances, at full liberty to rehear the cause, for the purpose of varying his minutes, and correcting any mistakes made by the parties in relation to the nature and operation of his decree. Indeed, by the general practice in this circuit, the decrees and decretal orders

of the circuit court, if they contain anything more than a mere affirmance of the decree of the district court, or a formal dismissal of the suit, are always submitted to the court upon a written draft, and varied and corrected and amended by the court upon the suggestion of the parties, as well as upon its own mere motion, and in vacation, as well as in term. It is usual, I believe, in the district court of Massachusetts, after an opinion has been pronounced upon the case, to give time to the parties to draw up the final decree, and to add to and vary the original minutes, upon the suggestions of counsel, or upon the farther reflections of the court. And no appeal is ever entered, until after such a formal decree has been promulgated and entered on record. In this view of the actual posture of the case, it seems to me, that it was not competent for the district court to direct the formal decree to be entered in vacation, as of the preceding term, without at the same time giving notice to the parties, and submitting the decree to their examination, and allowing some opportunity to them, either to rehear the cause in the discretion of the court, or to enter an appeal. In this view of the matter it strikes me, that the district judge was at full liberty, when applied to on the morning after the adjournment, either to have reheard the cause, or to have allowed the appeal; since the decree had not been drawn out and entered on record during the term. He might have adopted either course; but he could not properly refuse both. He might have suspended all the proceedings and entry of the decree, and have reheard the cause at the next regular term of the district court, as unfinished business, or he might have allowed the appeal to the next circuit court. I am sure, that my learned brother (the district judge) would have eagerly embraced the opportunity of re-examining the case, or of allowing the appeal, if he had not felt extreme doubts as to his authority and jurisdiction so to act. Nor do I wonder at his doubts in a case of so much novelty, where there was no definite precedent to guide or to aid his judgment.

And this leads me to the consideration of the other question, arising upon the petition for a libel of review in the nature of a rehearing. That it is competent for a court of admiralty to rehear a cause after a decree has been pronounced, pending the term, and before the proceedings had been fully enrolled, or drawn up and entered on the record, I confess, I do not entertain the slightest doubt. It was well remarked by Lord Stowell, in the case of The Fortitudo, 2 Dod. 70, cited at the bar, that the court "might, perhaps, within the limits of that very extended equity which it is in the habit of exercising, deem it not improper in some cases to suffer a cause to be reopened. But it certainly would not do so, unless there existed very strong reasons to show the propriety of the measure." He added, what is very pertinent

in the present case, "that mere negligence or oversight would not be sufficient ground for such an extraordinary interposition of the authority of the court. A direct case of fraud, or something equivalent to it, must be made out" before such a step should be taken. His lordship was here speaking of a case, where all the proceedings had been voluntarily withdrawn and abandoned by the party before any decree; and perhaps the latter part of his language ought to be limited to such a case. I own, that I should have great difficulty in holding to this doctrine in the full extent of the language in which it is stated. If there has been a manifest mistake, going substantially to the merits, even with some slight ingredients of negligence on that side, and without any circumstances of fraud on the other side, I should be much inclined to direct a rehearing during the same term, while the proceedings are in paper, and the decree remains unexecuted. But I am not aware, that after the decree has been enrolled or entered on record, and the term has passed, that any court of admiralty, at least in this country, has ever entertained an application for a rehearing. In the high court of prize commissioners in England, it is said to be the practice never to rescind a decree after it has passed, or to open the subject anew. It has been suggested, that the court would not do it, even when a fraud had been practiced. But, at the same time, it was by implication admitted, that another mode of redress might be adopted, meaning, I suppose, that a libel, in the nature of a bill of review in equity, might be sustained, for the purpose of bringing the matter either before the appellate court, or before the court, in which the original decree was pronounced. I allude to the case of The Elizabeth and The Geheimirath, reported in 2 Act. 57, 58, note. But see The Flora, 1 Hagg. Adm. 298, 304, and The Elizabeth, 2 Act. 57, 58. See, also, Palmer's Practice of the House of Lords on Appeals and Writs of Error, Introduction, pp. 59–69. In the case of Hudson v. Guestier, 7 Cranch [11 U. S.] 1, the supreme court held, that a case could not be reheard after the term, in which it had been originally decided; and this rule has ever since been constantly adhered to. Whiting v. Bank of U. S., 13 Pet. [38 U. S.] 6, 13. But this is very different from saying, that there may not be a libel, in the nature of a bill of review. Commissions of review are sometimes granted in England to review the decrees of the appellate courts in ecclesiastical causes, and also in admiralty causes of civil and maritime jurisdiction, as contradistinguished from causes of prize. But such commissions are not matter of right, but are granted as matter of favor and discretion, or, as the phrase is, of the grace and benignity of the crown, upon the advice of the lord chancellor. This was so held in Mathews v. Warner, 4 Ves. 186, and Eagle-

ton v. Kingston, 8 Ves. 439, 465, 469, 481. In such commissions of review, it does not seem beyond the proper functions of the court in granting them to allow new pleas and proofs; and so in fact Lord Eldon seems to have thought it in Eagleton v. Kingston, 8 Ves. 439, 463, 472. I am not aware, however, that any such prerogative right to issue a commission of review has ever been recognized in America. If the object is attainable at all, it must be (as it seems to me) by a libel in the nature of a bill of review in equity, addressed to the proper court having possession of the cause. If a libel, in the nature of a bill of review in equity, would lie after a final decree in the admiralty, it seems to me, that it ought properly to be governed by the same rules and principles which regulate that proceeding in courts of equity, as well from their intrinsic propriety and reasonableness, as from the consideration that the bill of review had its origin in the civil and common law, from which the court of admiralty derives its own practice and modes of proceeding. This is sufficiently apparent from what is stated by Lord Chief Baron Gilbert in his Forum Romanum, c. 10, pp. 182, 183, an extract from which will be found in Story, Eq. Pl. (2d Ed.) § 403, note 4. That extract is also important for another purpose; for it shows, that while interlocutory sentences are always alterable before a definite sentence is pronounced, the definite sentence must always be in writing, and signed by the judge; and after it is so signed, it cannot be altered; but it properly becomes a matter of appeal. It thus affords an indirect confirmation of what has been already stated, that the minutes of a decree before it is drawn out at large (for it is not always signed by the judge in our practice) are always open to alteration; but the decree so drawn out, after it is approved and enrolled, is not, after the term is passed, open to be reheard. For every decree is treated, after it has been approved, as enrolled of the term, at which it passed.

But to return. One of the settled rules in regard to a bill of review, and bills in the nature of review in equity, is, that they will lie only for errors of law, apparent on the face of the proceedings, or for newly discovered facts material to the rights of the party, of which he could not avail himself at the time of pronouncing the original decree. If the facts were known, and might have been used at the time of the decree, or if, though not known, they might have been known by the exercise of reasonable diligence on the part of the party applying for the review, the court will refuse it; for bills of review upon new discovered facts are not matters of right, but rest in the sound discretion of the court. See Story, Eq. Pl. §§ 412–419; also McGrath v. The Candalero [Case No. 8,810]. Now, it is unquestionably true, that, in the present case, the matters relied on for a review were well known to the libellants at the time of pro-

nouncing the original decree, and there was great negligence in not then bringing them before the court. Assuming, that there was definitive decree, which was not appealed from by the mistake and misunderstanding of the libellants of the extent and operation of that decree, I do not well see, how a libel of review would have helped the matter; since it would not fall within any of the ordinary rules applicable to bills of review. And if the district judge had entertained the petition, and decided against the relief prayed, and refused to review the original decree upon the merits, as the allowance or disallowance of it was a matter of discretion, and not of right, I do not well see, how an appeal would have lain from a decree dismissing the petition of this court. For in matters of discretion the judgment of the district judge would not be subject to the revising authority of this court in the exercise of its appellate jurisdiction. The difficulty is, that the district judge, instead of hearing the petition upon its merits, dismissed it for want of jurisdiction; and if he possessed jurisdiction, then it might become the proper duty of this court to reverse that decree of dismissal, and to remand the cause to the district court for further proceedings; since, if the district judge had jurisdiction, it is by no means certain, taking all the circumstances together, that he might not, in the exercise of his discretion, have varied his original decree; and then the respondents might have brought up the whole proceedings before this court by appeal. The question, therefore, whether the district court does possess any jurisdiction by a bill of review, or otherwise, after the term has passed, is directly presented for the consideration of this court. I have not been able wholly to satisfy my own mind upon this point. But upon the most careful reflection which I have been able to bestow upon it, the result to which I have brought my mind, is, that, if the district court has a right to entertain a libel of review in any case, it must be limited to very special cases, and either where no appeal by law lies, because the matter is less in value than is required by law to justify an appeal, or the proper time for any appeal is passed, and the decree remains unexecuted;—or where there is clear error in matter at law; or, if not, where the decree has been obtained by fraud; or where new facts, changing the entire merits, have been discovered since the decree was passed, and there has been not only the highest good faith (uberrima fides), but also the highest diligence and an entire absence of just imputations of negligence; and, finally, where the principles of justice and equity require such an interference to prevent a manifest wrong. Farther than this, I am not prepared to go; and I may say, that, with my present impressions, I should go thus far with some hesitation, and pause at every step.

But I am spared the necessity of positively deciding this point by the actual posture of the present case. It appears to me, that in no just sense can the original decree in this case be deemed a final or definitive decree. At most, it is but an interlocutory decree, partaking of the character of a final decree. I agree, that there are cases, in which either party may appeal from an interlocutory decree, having the effect of a final decree. Thus, for example, if upon a bill to foreclose a mortgage there is a decree for a sale of the mortgaged premises, although the decree is but interlocutory, and the sale is not perfected, yet, inasmuch as it has the effect of a final decree upon the rights of the mortgagor, he may appeal from it before such sale. So it was decided by the supreme court in Ray v. Law, 3 Cranch [7 U. S.] 179. But although a party, injured by such a decree, may appeal before the definitive decree is entered, and the whole proceedings are closed under it; yet it does not follow, that he is bound so to do, and may not lie by, and appeal after the definitive decree. On the contrary, as I understand the law, he has an election to pursue the one course or the other. Now, in the present case, it is impossible to consider the original decree as final between the parties, as to all the matters in controversy. It was interlocutory in its character for many purposes. It directed the charges and expenses of keeping and selling the property, and the fees and charges of the officers of the court, to be first deducted from the proceeds of the sale. Now, the exact amount of these charges, expenses and fees were not ascertained, and were necessarily open to further future inquiry, and might become matters of controversy between the parties, upon which they might have a right to take the opinion of the court. Indeed, it was indispensable, that this should be done, before it could be ascertained, what the moiety of the salvors would be in pecunia numerata. And then, again, the sums, belonging to the distributive shares of each salvor, remained to be ascertained, and awarded to him severally, in his own proper name; for, until that should be done, he could not know what his own particular share was, and whether he was aggrieved or not by the decree, not only as to the salvage in general, but as to his particular share thereof, so as to institute an appeal severally, and for his own interest. Thus, for example, until the share of each salvor was specifically ascertained, it would be impossible to say, whether the sum in controversy between him and any co-salvor, or the claimants, was enough to found the appellate jurisdiction of this court. It was indispensable, therefore, that the whole matter should have been referred to a master or auditor, to take an account, and ascertain the sums due to all parties according to the principles of the original decree; and for that purpose to hear all the parties, and make a report to the court. Such a report, when made, would be open to

contestation by any of the parties in interest; and until confirmed by the court, there would not be a sufficient basis on which to found a final decree, absolute in its nature, upon all the rights of all the parties.

It seems to me, therefore, that the district judge had a clear remaining jurisdiction in the premises for this purpose; that the original decree was not so final, as without an appeal to supersede the necessity of further proceedings; and consequently, that, as the original cause has never been wholly removed from his jurisdiction by any appeal, he is at liberty to rehear it, and to vary or modify that decree, and is bound to go on and perfect it by an absolute definitive decree. When such a decree shall be rendered by him, if unsatisfactory to any of the parties, it will of course be open to appeal under the usual circumstances.

My judgment, therefore, is, that the decree of the district court on the petition ought to be reversed; and, as all the proper materials are not now before this court to enable it to act definitely upon the whole rights of the parties, that the case ought to be remanded to the district court for further proceedings. If the parties, with a view to prevent further delay, shall agree, that the original cause shall be deemed to stand before this court, as if an appeal had been originally entered, and allowed in the district court, I shall have no difficulty in acting upon such an agreement, instead of remanding the cause. Otherwise a special mandate will be sent with the cause to the district court.