## JACKSON v. MUNKS.

(Circuit Court, D. Washington, N. D. September 16, 1893.)

### No. 174.

1. LIBEL OF REVIEW—WHEN LIES.

A libel of review in admiralty will lie in favor of a surety on the release bond of a vessel, who was absent from the state at the time of the decree, and knew nothing thereof until after the expiration of the time for appeal; it appearing that the libelant had delayed the hearing for eight years, during which the claimant died insolvent, and the testimony originally taken was lost; that the decree was rendered on testimony of the libelant alone; and that the lost depositions, being subsequently found, showed a state of facts which, if presented to the court, would have constrained it to find against the libelant's claim.

2. SAME—TRIAL OF ORIGINAL SUIT—EXPIRATION OF TERM.

The rule that a cause may not be reheard after the term in which it was originally decided, except upon a showing of fraud, applies only to a direct proceeding in the same cause, and does not affect a proceeding to review the original suit.

In Equity. Libel by Charles E. Jackson, surety for J. H. Olney, owner and claimant of the steamer Susie, against William Munks, libelant of said steamer, to review a decree of the district court in favor of said Munks as libelant of the steamer. Decree modified. The libel of review was originally filed in the district court, but, the district judge being disqualified, it was certified to the circuit court.

Green & Turner, for libelant.

Hughes, Hastings & Stedman, for respondent.

GILBERT, Circuit Judge. Charles E. Jackson filed his libel against William Munks to review the decree of the United States district court of this district rendered on the 28th day of September, 1890, in the case of William Munks, libelant, against the steamer Susie, etc., alleging that the decision of the court, which in that case was rendered in favor of William Munks and against Charles E. Jackson, as surety upon the bond given by the claimant of said steamer for her release, was erroneously entered, and fraudulently

obtained by the suppression of a certain deposition, taken by the libelant therein, which deposition, if read in the evidence on the trial of said cause, would have been conclusive against the right of the libelant to recover therein. The libel of review was not filed until after the end of the term of the district court at which the decree in the original suit was entered, nor until three months after the opening of the December term of 1890 of said district court. The libel of review sets forth the facts contained in the record. It alleges that upon filing the libel of William Munks against the steamer, and upon the issuance of a monition thereupon, the said C. E. Jackson, as surety for J. H. Olney, the owner of the steamer, and the claimant in the original suit, signed, on June 5, 1882, a bond for the release of the steamer, and for the satisfaction of the decree of the court in said cause. The libelant alleges that after signing said bond he paid no further attention to said matter, supposing that no decree could be rendered against him without a further suit, and that he was not represented by a proctor in said original suit, and knew nothing of the decree therein until after the end of the term at which it was rendered, and his time for appealing therefrom had expired; that issue was joined upon the libel in said original proceeding, and that in 1888 said Olney died, but that fact was not known to the libelant until November, 1890; that on the 23d day of September, 1890, the said cause came on for trial, and it was decreed that the said libelant, William Munks, do have and recover of and from this libelant the sum of $671.71, and costs and disbursements, and that execution issue therefor; that at the time of said trial and of the rendering of said decree this libelant was not represented by counsel, and, for some time prior thereto, the libelant was without the state of Washington, and knew nothing of said proceedings, and did not discover until the 1st of March, 1891, that there was a good and sufficient defense to said original libel; that since the decree, execution has been issued against the libelant, but said decree remains unsatisfied.

The conceded facts in regard to the original suit are that the steamer made fast to a boom of piles in Fidalgo bay, in Washington; that the piles were about eight inches in diameter, some less, and were boomed lengthwise and across with similar piles; that the steamer at the time had a raft of logs also in tow, and the boom of piles was made fast to the logs; that the steamer made fast to the piles with a hawser which was considerably worn, the hawser being tied to the boom poles of the raft; that in performing the towage service the steamer was obliged to pass through Swinomish slough, where it met a strong current from the tide. In consequence of the opposing current, the steamer cast anchor, and made both booms fast to the shore. While in this position the hawser between the raft of logs and the piles parted, letting the latter go adrift. The boom of piles ran ashore in the slough, and the ebbing tide left the boom poles partly upon the bank and partly in the water, thus allowing the piles to escape. Probably from one-third to one-half of the piles were lost, being floated out by the ebbing tide.

It appears from the testimony that on the issues formed in the original suit the libelant therein began taking testimony on the 20th day of August, 1883, and continued taking testimony at intervals until September 17, 1887, when the testimony of William Wardell was taken; and all the testimony so taken was supposed to have been lost in the great fire in Seattle, and no further proceedings were had in said cause until the 24th day of September, 1890, when testimony was again taken of the libelant, William Munks, in his own behalf, but no testimony was taken of any other witness for the libelant, save the deposition of one witness, and no evidence whatever was taken for the claimant or for the said C. F. Jackson. Upon taking the testimony, upon the issues presented on the libel of review, the original testimony taken on behalf of the libelant, Munks, and lost, as above mentioned, was presented. The testimony of said Wardell, so taken and lost and subsequently found, was in substance that he was present, and noticed the manner in which the piles taken in tow were boomed, and that he did not think they were well boomed; that they used piles for boom sticks; and used ordinary boom chains, and that they left a good deal of chain at the coupling, and that some of the piles were very small. He further testified that he was assisting the steamer, and had occasion to go out on the boom two or three times; that when the boom of piles was taken in tow the water was smooth; that one of the piles had already worked out of the boom; and he described the loss of the piles as follows:

"We got up part of the way through the slough that night, and tied up to the bank. I had my boat along, and I pulled around, or partly around, the boom, to see how it was; and the piles were sticking out in all directions from the boom. They had run out so that they nearly filled the slough, the boom was so big. They ran out behind, and at the sides, too. Of course, that caused a good deal of current. The raft was bigger, and caught more water. The steamer was tied up to the bank, and shortly after that—an hour, probably, after we had got everything, as we thought, secured—the line parted between my logs and the piles. We felt it break, but we did not get there in time. When the tide went out I think there was a lot of piles went out."

On careful consideration of the testimony, it seems clear to me that if the evidence of William Wardell had been presented to the district court upon the trial of the original libel, it would have convinced the court that there was no negligence on the part of the steamer, and no liability for the loss of the piles in the Swinomish slough. The burden was upon William Munks to prove the negligence of the steamer. The district court found that there was negligence consisting in the use of a hawser of insufficient strength. The testimony of William Wardell, who was the libelant's own witness, and whose evidence is uncontradicted, shows that the raft was taken in tow in the night, and that at the time the piles were lost there was an unusual strain upon the hawser, arising from the fact that, the piles in the boom being insufficient to hold the rafted piles in position, the latter worked out and projected in all directions, some of them to the extent of half their length, thereby offering a greatly increased resistance to the current, and producing a greatly

increased strain upon the hawser. It was not disputed that the raft of piles was taken in tow in the night, and that the owner and master of the steamer was unacquainted with the defective manner in which they were boomed. The record shows further that the libelant is not prevented from bringing this record in review from any neglect or laches upon his part; and, since the decree was rendered against him alone upon his bond, and Olney, his principal, was insolvent at the time of his death, he has no remedy other than the present suit.

There are but few precedents to be found in the decisions of the admiralty court upon the subject of the jurisdiction of the district court to entertain a libel of review in admiralty. In the case of The New England, 3 Sum. 495, Mr. Justice Story, after considering the English cases, expressed a doubt whether a rehearing could be granted after a final decree was made, but intimated that a libel in the nature of a bill of review in equity would lie after a final decree, under similar circumstances as in equity, and he proceeded to say:

"But upon the most careful reflection which I have been able to bestow upon it, the result to which I have brought my mind is that if the district court has a right to entertain a libel of review in any case, it must be limited to very special cases, and either where no appeal by law lies because the matter is less in value than is required by law to justify an appeal, or the proper time for an appeal is past, and the decree remains unexecuted; or where there is clear error in matter at law; or, if not, where the decree has been obtained by fraud; or where new facts changing the entire merits have been discovered since the decree was passed, and there has been not only the highest good faith, but also the highest diligence, and an entire absence of just imputation of negligence; and, finally, where the principles of justice and equity require such interference to prevent a manifest wrong."

In Car Co. v. Hopkins, decided in the United States circuit court in Illinois, and reported in 4 Biss. 51, it was held that the court of admiralty would entertain a libel for review filed after the term has passed at which the decree complained of was rendered, and after the decree had been executed, when actual fraud was charged, and the libelant was without fault, and would be otherwise without remedy. In Janvrin v. Smith, 1 Spr. 13, it was held that the remedy of an admiralty court to review its decree was not to be limited to the term at which the decree was passed.

It is not shown that there was any rule of the district court for Washington, at the time of filing this libel, which would preclude the libelant from filing the same. The rule that a cause may not be reheard after the term in which it has been originally decided, except upon a showing of fraud, applies only to a direct proceeding in the same cause. It does not affect a proceeding such as is instituted by the filing of this libel, for the libel of review is an original suit. This case comes within the rule of jurisdiction defined in the cases cited above, and it is a case that presents strong ground for affording the relief sued for. The deposition of Wardell, if presented at the trial of the original libel, would have been fatal to the right of the libelant therein to recover. The fact that Jackson, the libelant herein, was unacquainted with the proceedings in the original

suit, is explained and excused when we consider the long and unnecessary delay of Munks in prosecuting his libel. The surety on the bond signed his undertaking in 1882 in the sum of $725, and went about his business. The amount involved in the libel was but $356.32. The witnesses were all within reach, and their testimony was brief, and could have been taken in a short time thereafter. Instead of so proceeding, the libelant, Munks, delayed more than a year before beginning his testimony. He then adjourned from time to time for four years, taking in all some sixty pages of testimony, and finally brought on the case for trial more than eight years after filing his libel. In the mean time the claimant had become insolvent, and had died, and the surety upon the bond had every reason to suppose that his liability had been long since extinguished by a final decree.

The evidence upon the trial of the original cause shows that there was a second loss of certain of the piles after the escape of the lost piles from the boom, which was caused by striking a snag, and that thereby six piles were lost, the same being of the value of $16.32. The loss of these piles was found by the district court to have been caused by the negligence of the steamer. It is not now shown in this proceeding that that finding was erroneous. That part of the decree, therefore, must be allowed to stand.

It will be the decree of this court that the decree rendered in the district court in favor of William Munks and against C. E. Jackson, the libelant herein, be modified so far as concerns all of the piles lost in Swinomish slough, save and except those lost by striking the snag referred to in said former decree; and that the said William Munks recover nothing as against this libelant for or on account of said piles, but that said former decree stand in favor of said William Munks and against said C. E. Jackson for the loss of the said piles so lost by striking said snag so referred to, and for the costs and disbursements of that suit, and that the libelant in this suit recover of and from the said William Munks his costs and disbursements herein.