## MUNKS v. JACKSON.

(Circuit Court of Appeals, Ninth Circuit. February 4, 1895.)

### No. 160.

1. ADMIRALTY—WHEN LIBEL OF REVIEW LIES.

It is within the discretion of the district court to entertain a libel of review in admiralty, filed after the expiration of the term, by a surety on the release bond of a vessel, who was absent from the state at the time of the decree, and knew nothing thereof until after the expiration of the time for appeal; it appearing that the libelant had delayed the hearing eight years, and until the claimant had died insolvent; that he had asserted that certain depositions originally taken were lost; that the decree was rendered on his deposition alone; and that the said depositions, being afterwards produced, showed a state of facts which, if presented to the court, would have constrained it to find against the libelant's claim. 58 Fed. 596, affirmed.

2. TOWAGE—LIABILITIES OF TOWING VESSEL—COMMON CARRIERS.

A contract of towage does not impose the liability of a common carrier, and, in cases of loss or injury to the tow, the burden is upon the claimant thereof to prove negligence on the part of the towing vessel. The Webb, 14 Wall. 414, followed.

3. ADMIRALTY—PROCEEDINGS IN REM—RELEASE BOND—LIABILITIES OF SURETY.

A bond in the general form of a common-law bond, admittedly given to secure the release of a vessel, and approved by the judge and filed with the clerk, is within the provisions and requirements of Rev. St. § 941, even if given before the vessel is actually arrested, process having been issued to the marshal for that purpose; and a decree and execution thereon may be awarded against the surety without a separate suit.

4. SAME—JURISDICTION—DECREE FOR EXCESSIVE AMOUNT.

The fact that a decree upon the release bond of a vessel is in excess of the penalty named in the bond does not deprive the court of jurisdiction, but the decree is a nullity for the excess only.

Appeal from the Circuit Court of the United States for the District of Washington.

This was a libel for review, filed in the district court by Charles E. Jackson, surety on the release bond of the steamer Susie, against William Munks, to review a decree in favor of said Munks as libelant of the steamer. The district judge being disqualified, the bill of review was certified to the circuit court, by which the decree in the original cause was modified and affirmed. 58 Fed. 596. The respondent appeals.

Hastings & Stedman and James M. Epler, for appellant.

Greene & Turner, for appellee.

Before McKENNA, Circuit Judge, and HAWLEY and MORROW, District Judges.

HAWLEY, District Judge. The facts of this case, and the reasoning and conclusion of the circuit court thereon, as reported in Jackson v. Munks, 58 Fed. 596, are hereby adopted as the basis of this opinion. The question whether the libelant was entitled to file a bill of review after the term of the district court had expired is not, perhaps, entirely free from doubt. Although the case does not show actual fraud upon the part of Munks, which is one of the grounds mentioned to sustain the bringing of such a bill (Car Co. v. Hopkins, 4 Biss. 51, Fed. Cas. No. 10,334); nor "the highest diligence and an entire absence of just imputations of negligence" upon the part of Jackson, as stated by Mr. Justice Story in The New England, 3 Sumn. 496, 506, Fed. Cas. No. 10,151, yet the delay of Munks in not bringing the case up for trial for a period of eight years after filing his libel, and then, after the claimant Olney had died, pressing it for trial at a time when Jackson, the surety upon the bond, was known to be absent from the state, and asserting and claiming that certain testimony, which had many years previously been taken, was lost, when in truth it was not, and which, if it had been presented to the court, would have prevented the recovery of a decree in favor of Munks in the amount obtained by him, makes out such a case as to bring the question of allowing the libel for review within "the judicial discretion of the court, guided by such rules of decision as sound principles of justice and policy dictate." Janvrin v. Smith, 1 Spr. 14, Fed. Cas. No. 7,220. The court did not, in our opinion, err in exercising this discretion in favor of the libelant.

Upon the merits, we are clearly of opinion that the decision of the circuit court was correct. In answer to the contention upon the part of appellant that the towboat was a common carrier, and in affirmance of the rule stated by the circuit court that "the burden was upon William Munks to prove the negligence of the steamer," we quote the language of the supreme court in The Webb, 14 Wall. 414:

"It must be conceded that an engagement to tow does not impose either an obligation to insure, or the liability of common carriers. The burden is always upon him who alleges the breach of such a contract to show either that there has been no attempt at performance, or that there has been negli-

gence or unskillfulness to his injury in the performance. Unlike the case of common carriers, damage sustained by the tow does not ordinarily raise a presumption that the tug has been in fault. The contract requires no more than that he who undertakes to tow shall carry out his undertaking with that degree of caution and skill which prudent navigators usually employ in similar services."

It is true, as subsequently stated by the court, that there may be cases in which the result is a safe criterion by which to judge of the character of the act which has caused it. But this case does not come within the exception to the rule announced by the court. Contention is made by the appellee that the territorial district court never had any jurisdiction to render any decree against him upon the ground that the bond signed by him was in form a common-law bond, and is not conditioned for judgment nor for execution against the surety; that the act of March 3, 1847, "for the reduction of the costs and expenses of proceedings in admiralty against ships and vessels" (9 Stat. 181) only authorized judgment against a surety in case of a bond received from the claimant by the marshal, and returned by him into court as the ground of his stay of process or release of the vessel; that, it being a cause in rem, jurisdiction could only be obtained by an actual seizure of the vessel, or by delivery to the marshal of such a bond as is provided for in the statute, while process for her arrest was still in his hands. The record upon which this contention is based shows that the monition against the steamer Susie was issued May 5, 1882, and returned by the marshal "without service, by request of plaintiff's attorneys." This return is dated May 10, 1882, but was not returned and filed with the clerk until May 16, 1882. The bond for the release of the steamer was executed May 12, 1882; was approved by the judge May 18, 1882; and filed with the clerk "as of 5th June, 1882." The bond is in general form a common-law bond. It is signed by H. J. Olney and C. F. Jackson. It recites the filing of the libel by Munks against the steamer Susie, and the condition of its obligation is such "that, if the above bounden shall abide by and answer the decree of the court in such cause, then the above obligation to be void; otherwise to remain in full force and virtue." Jackson admits that he signed this bond for the release of the steamer. This bond comes clearly within the provisions and requirements of the statute approved March 3, 1847 (Rev. St. U. S. § 941). The claimant had the right, after the libel was filed, to give a bond or stipulation, which might be approved by the court, before the steamer was actually seized; and, if the statute requires that the bond should first be delivered to the marshal as claimed by appellee,—a question that need not be discussed,— we would be bound to presume, in the absence of any affirmative showing to the contrary, that the law in this respect had been complied with. The surety or stipulator upon the bond, with actual knowledge that it was given for the release of the steamer, is bound by the terms of the stipulation which he voluntarily signed, and thereby brought himself within the jurisdiction of the court, and was thereafter bound to "abide by and answer the decree of the court in such cause."

Benedict, J., in The Roslyn, 9 Ben. 119, 129, Fed. Cas. No. 12,068, said:

"It is a common practice, adopted for convenience and the saving of expense, to give a stipulation to secure the debt upon simple notice of the filing of a libel. A stipulation given under such circumstances is valid, although in fact the vessel sought to be proceeded against is not, and never was, in custody. The jurisdiction of the court, upon the giving of such a stipulation, to proceed with the cause to a decree, and to enforce the stipulation according to its terms, has never, to my knowledge, been doubted. In such case the entering a general appearance, and giving a stipulation to abide by a decree, is deemed a waiver of all objection based on an omission to serve the process, and it is not thereafter open to the stipulators to deny the power of the court to compel them to perform their agreement."

See, also, The Alligator, 1 Gall. 145, 149, Fed. Cas. No. 248; The Struggle, 1 Gall. 477, Fed. Cas. No. 13,550; The City of Washington, 13 Blatchf. 411, Fed. Cas. No. 2,772.

Admiralty courts proceed according to the principles, rules, and usages which belong to the admiralty, as contradistinguished from courts of common law. "Whenever a stipulation is taken in an admiralty suit, for the property subjected to legal process and condemnation, the stipulation is deemed a mere substitute for the thing itself, and the stipulators liable to the exercise of all those authorities on the part of the court which it could properly exercise if the thing itself were still in its custody. This is the known course of the admiralty." The Palmyra, 12 Wheat. 1. Nothing can be better settled, said Judge Story, than that the admiralty may take a fide jussory caution or stipulation in cases in rem, and may in a summary manner award judgment and execution thereon. Jurisdiction to that effect is possessed by the district court; and, being fully authorized to adopt the process and modes of proceeding of the admiralty, they have an undoubted right to deliver the property on bail and to enforce conformity to the terms of the bailment. Authority to take such security is undoubted, and, whether it be by a sealed instrument or by a stipulation in the nature of a recognizance, cannot affect the jurisdiction of the court. Having jurisdiction of the principal cause, the court must possess jurisdition over all the incidents, and may, by motion, attachment, or execution, enforce its decrees against all who become parties to the proceedings. The Alligator, 1 Gall. 145, Fed. Cas. No. 248; Nelson v. U. S., Pet. C. C. 235, Fed. Cas. No. 10,116. Bonds, says Dunlap, are, to all intents and purposes, stipulations in the admiralty. Dunl. Adm. Prac. 164. See The Wanata, 95 U. S. 600, 616; U. S. v. Ames, 99 U. S. 35, 41; The Madgie, 31 Fed. 926. The fact that the decree of the territorial court was in excess of the penalty named in the bond did not deprive the court of jurisdiction. The judgment was a nullity for the excess only, and, if the circuit court had found in favor of Munks, it would have been its duty to modify the decree so as to bring the amount awarded to him within the penalty. The Webb, 14 Wall. 406, 418. The claim of appellee that no judgment could now be rendered against him because the claimant of the vessel, who was a costipulator on the bond, is dead, is untenable. Penhallow v. Doane, 3 Dall. 54;

The James A. Wright, 10 Blatchf. 160, Fed. Cas. No. 7,191; The C. F. Ackerman, 14 Blatchf. 360, Fed. Cas. No. 2,564. The judgment of the circuit court is affirmed, appellee to recover his costs upon appeal.