**FRESH GROWN PRESERVE CORPORA-
TION v. UNITED STATES.**

No. 9713.

Circuit Court of Appeals, Sixth Circuit.

May 31, 1944.

192

Louis Halle, of New York City (Edmonds & Harter, of Columbus, Ohio, and Halle, Halle & Rowen, of New York City, on the brief), for appellant.

R. J. O'Donnell, of Columbus, Ohio (Calvin Crawford, of Cincinnati, Ohio, R. J. O'Donnell, of Columbus, Ohio, and Vincent A. Kleinfeld, of Washington, D. C., on the brief), for appellee.

Before SIMONS, MARTIN, and McALLISTER, Circuit Judges.

MARTIN, Circuit Judge.

Charging adulteration and misbranding in violation of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C.A. § 301 et seq., the United States, by its attorney for the Southern District of Ohio, filed a libel against one hundred ninety-six cases, containing six cans each, of an article of food labeled under six assorted flavors as "Nature's Own Pure" blackberry, apricot, grape, loganberry, peach and raspberry jam. The libel alleged that · the appellant, Fresh Grown Preserve Corporation, had transported the food in interstate commerce from Kingsland, New Jersey, to East Columbus, Ohio; and that the article was situated within the jurisdiction of the district court. It was averred that analysis showed the food article to be adulterated in violation of U.S.C.A., Title 21, Section 342, in that imitation blackberry, apricot, grape, loganberry, peach and raspberry jam deficient in fruit had been substituted wholly, or in part, for such fruit jam, as defined in the Federal Register of September 5, 1940, Section 29000. The libellant charged further that the article was misbranded in violation of U.S.C.A., Title 21, Section 343(a), in that the label "Pure Blackberry Jam" and the use of the word "Pure" in labeling the other flavors were false and misleading as applied to the article which was deficient in fruit. The misbranding was said to constitute imitation of another food; and failure to conform to the definition and standard of identity prescribed by applicable regulations (U.S.C.A., Title 21, Section 341) was averred. The libellant prayed for the issuance of appropriate process of attachment; for citation of all persons asserting title or claim to the article of food; for condemnation of the food product; for the entry of all appropriate orders; and for costs and general relief.

On October 2, 1941, five and one-half months after this libel was filed, the district court entered a consent decree, approved by the United States Attorney and the appellant. The consent of the latter was evidenced by the official signature of its president to the following stipulation at the bottom of the decree: "The Fresh Grown Preserve Corporation, appearing herein as claimant and owner of the above mentioned canned jams, does hereby admit the truth of the allegations contained in the libel filed in the above entitled cause. It consents that the foregoing proposed decree be entered, the stipulations of which are hereby made a part of this consent."

Reciting this consent, the decree provided that the seized merchandise be condemned as forfeited to the United States of America.

In awkwardly arranged language, the decree provided for the release of the seized food article to the claimant (appellant herein), upon its performance of all the conditions of a bond in the penal sum of $500, should such bond be executed by the claimant and delivered to the libellant within thirty days from the date of the decree. This bond was directed to be conditioned upon numerous undertakings and restrictions. Within thirty days from the entry of the decree, the claimant would be required to reship the food to its warehouse at Lyndhurst, New Jersey, "there to be relabeled under the supervision of the Food and Drug Administration so that the same will comply with the requirements of the Food, Drug and Cosmetic Act of June 25,

1938." The merchandise was to be kept intact for inspection by a representative of the United States Federal Security Agency, and records preserved as proof, to the satisfaction of the government's agent, of the identity of the foodstuff.

The positive mandate was written into the decree that the "claimant shall submit to the said Agency at the said warehouse for inspection all of the said aforementioned canned jams relabeled." The claimant was forbidden under any circumstances whatsoever to ship, sell or offer for sale in interstate commerce or otherwise for human consumption any part of the canned jams "until the United States Federal Security Agency, through its designated inspector or other representative shall have had free access thereto at the aforesaid warehouse in order to make whatever examination and test they may desire, and shall have released such aforementioned canned jams for such sale and shipment." The claimant was required to abide the final decision of the representative of the Federal Agency, and should his decision be adverse, the entire lot or any portion of the canned goods not passing inspection was directed to be destroyed under his supervision without further order of the court. Provisions were made for the payment by claimant of the cost of the government inspection, for the disposition of the merchandise in compliance with state and federal law, and for the furnishing by claimant of satisfactory evidence that it had complied with the decree.

Naming the United States of America as obligee, a bond with a copy of the district court decree annexed was executed by appellant, with the Century Indemnity Company as surety, and was filed in the case on November 6, 1941. This bond contained the following covenant: "Now, therefore, the condition of this obligation is such that if the above bounden Principal and its successors and assigns shall abide by and perform said decree aforesaid and any and all other decrees and orders of this Court entered in the said cause, and shall not sell or otherwise dispose of said food contrary to the provisions of Food, Drug and Cosmetic Act of June 25th, 1938, and amendments thereto, and all laws Federal and State thereto relating and shall not sell or dispose of said food until the United States Federal Security Agency through its designated inspector or other representative shall have released said food for sale and/or shipment, said bond to be approved by this Court, then this obligation to be void, and of no effect, otherwise to remain in full force and effect."

The United States, by its Attorney, filed a motion on March 22, 1943, for forfeiture on the performance bond on the ground that the claimant had not complied with the order of the Court. An affidavit of the Assistant United States Attorney was filed in support of the motion. The affiant asserted that the food article had not been relabeled in compliance with the decree of the court either within thirty days from its date or within the extended time granted. The affiant charged that the order of the district court had been "circumvented deliberately" by the claimant and that "a considerable number of cases of adulterated and misbranded jam and preserves were reshipped in interstate commerce from Lyndhurst, New Jersey, or otherwise disposed of in their original condition as they had been returned to the factory of the Fresh Grown Preserve Corporation under bond for relabeling."

Leo Greenberg, vice president of the appellant corporation, filed on May 14, 1943, an affidavit in opposition to the motion of the United States Attorney. Certain correspondence between the New York office of the Federal Security Agency and the appellant and its attorney was attached to the Greenberg affidavit. The principal point made by appellant in this affidavit and the attached correspondence was that the merchandise subjected to seizure in the libel proceedings had been placed on the premises of appellant and held in readiness for relabeling in compliance with the decree, and that although numerous requests had been made of the Food and Drug Administration of New York to have its representative supervise the relabeling pursuant to the terms of the decree, the government agency had failed to send its representative to supervise the relabeling. The affiant Greenberg further deposed that "during the month of February, 1943, the claimant relabeled the said merchandise as provided in the said decree, *except that such relabeling was not supervised by the Food and Drug Administration and that such failure to supervise such relabeling was not occasioned through any fault of the claimant.*" [Emphasis supplied.]

The district court, on June 3, 1943, filed a memorandum decision reciting that the motion of the United States had been heard

and submitted "on the affidavits of the libellant and the claimant and the Court being fully advised in the premises finds that the motion should be sustained." On June 28, 1943, the district court entered a decree declaring a forfeiture on the bond.

On July 27, 1943, appellant filed a motion for an order vacating the order of the district court entered June 28, 1943, and for reargument of the libellant's motion for judgment on the bond. In support of this motion, the attorney for appellant filed his own affidavit in which he stated: "Your deponent respectfully submits that the court was without jurisdiction to entertain this motion and to enter the order decreeing the payment of the bond for the reason that there is no provision in law, under the Federal Food, Drug and Cosmetic Act, authorizing the entry of such judgment by motion in the original proceeding, and that any recovery on such bond, because of any claim of a violation of any of its terms, must be had in a separate proceeding to be instituted as is required in any other action at law for the recovery of monies."

This motion for reargument and for vacation of the decree was denied. The appeal to this court is from the decree of June 28, 1943, adjudging forfeiture on the performance bond.

The main contention of the appellant is a reiteration of its argument in the district court that the court lacked jurisdiction to decree a forfeiture on the performance bond, a plenary action on the bond being asserted as essential to recovery. The argument is made that with the entry of what appellant terms "the final decree" providing for forfeiture of the condemned goods and their return to the claimant upon filing bond pursuant to Section 334(d) of Title 21 U.S.C.A., there was no cause pending before the court; that the decree contained no provision for forfeiture of the bond regardless of breach thereof; and that the Federal Food, Drug and Cosmetic Act contains no provision for forfeiture of the bond and entry of judgment thereon "without an independent action being commenced for that purpose," and after trial of the issues in such action. The further point (which is considered unimportant) is made that no notice having been given the surety, the district court lacked power to adjudicate the surety's liability on the bond.

Citing Four Hundred and Forty-three Cans of Frozen Egg Product v. United States, 226 U.S. 172, 183, 33 S.Ct. 50, 53, 57 L.Ed. 174, the appellant points to the distinction between a forfeiture proceeding under the Federal Food, Drug and Cosmetic Act and seizure under the Admiralty Law. It is true that the Supreme Court declared that while the statute directs that proceedings under the Pure Food Act shall conform to those in admiralty, as near as may be, the Congress did not intend to liken the proceedings to those in admiralty beyond the seizure of the property by process in rem, "then giving the case the character of a law action, with trial by jury if demanded and with the review already obtaining in actions at law."

■ This principle is deemed irrelevant to the situation confronted here. The libel proceeding was certainly not terminated with the entry of the decree of forfeiture, which elaborately provided for future steps to be taken before the reconditioned or relabeled goods were authorized to be released without restriction to the claimant. The district court obviously did not intend to surrender its jurisdiction over the condemned food article until the requirements of its decree should be fully met. The statute, U.S.C.A., Title 21, Section 334(d), expressly provides that after entry of the decree of condemnation, and payment of the costs of the proceeding and the execution of the good and sufficient bond conditioned that the condemned food article shall not be sold or disposed of contrary to the provisions of the Federal Food, Drug and Cosmetic Act or the laws of any state or territory in which sold, the court may by order direct that the condemned article be delivered to the owner for destruction or to be brought into compliance with the provisions of the Act under the supervision of an officer or employee duly designated by the Federal Security Administrator, and that the expenses of such supervision shall be paid by the person obtaining release of the article under bond.

■ The omission from the statute of specific directions for procedure on the bond in the event of breach of its conditions is not fatal to the inherent right of the court to proceed to judgment of forfeiture in the event of breach. No restriction upon such course is indicated in the statute. There could be no point to acceptance of a bond in lieu of goods seized and condemned pursuant to the statute and temporarily returned to the custody of the owner upon prescribed conditions unless liabili-

ty upon the bond could be adjudicated in the same proceeding in the event of a failure of the obligor to fulfill the conditions of the decree. The clear intent of the statute to withdraw from commerce food unfit for human consumption would be thwarted should the narrow interpretation be adopted that the district court loses jurisdiction over a condemned food article when a performance bond is accepted conditioned on the relabeling or reconditioning of the misbranded or deleterious goods under government supervision. We find no justification for such narrow construction in the language of the statute itself.

Nor can an unexpressed intention of Congress to require a plenary or independent action as precedent to adjudication of liability upon the performance bond be reasonably deduced from the manifest purpose and full context of the statute. In the absence of prescribed procedure for the fixation of liability for nonperformance of the performance bond, it is more reasonable to assume that Congress intended that the district court retaining jurisdiction over the seized goods should retain also the right to declare and adjudicate a forfeiture on the bond. What reasonable object would be served by trying in a separate action and perhaps in a different court the issue of whether the owner of condemned goods had properly relabeled or reprocessed the articles in conformity with the decree of the court of original jurisdiction which condemned the merchandise as violative of the Federal statute? No such repetitive or round-about procedure should be presumed as within the intent of Congress.

Assimilating the procedure here to admiralty practice, a court having jurisdiction of the principal cause, possesses jurisdiction over all its incidents, and may by motion, attachment, or execution enforce its decrees against all who become parties to the proceedings. Bonds, in intent and purpose, are stipulations in the admiralty. Munks v. Jackson, 9 Cir., 66 F. 571, 574.

No issue of fact as to damages need be tried in the instant case for the reason that the bond filed herein is penal and not indemnatory in character and names the United States of America as obligee.

It is settled law that in the absence of express or implied provisions to the contrary in a statute which prescribes the making of bond, or in the bond itself, the full penalty for breach of the bond executed as a condition for license or other privilege may be recovered where the obligee is a body politic. Clark v. Barnard, 108 U.S. 436, 2 S.Ct. 878, 27 L.Ed. 780; United States v. Dieckerhoff, 202 U.S. 302, 26 S.Ct. 604, 50 L.Ed. 1041; Illinois Surety Co. v. United States, 2 Cir., 229 F. 527; Eagle Indemnity Co. v. United States, 4 Cir., 22 F.2d 388. When by statute an agency of the United States Government is authorized to take bond as assurance of compliance with law, there is no necessity that the statute expressly prescribe the conditions of the bond. Illinois Surety Co. v. United States, supra; Moses v. United States, 166 U.S. 571, 17 S.Ct. 682, 41 L.Ed. 1119.

Appellant contends further that its right to a trial of contested issues was denied by the entry of judgment on the bond merely on motion supported and opposed by affidavits. This argument would rest on solid ground if the record revealed a factual basis for it. Were a material issue of fact presented by conflicting affidavits, either party would be clearly entitled to introduce its own witnesses and to cross-examine those of its opponent. But under Civil Procedure Rule 56, 28 U.S.C.A. following section 723c, summary judgment on motion on appropriate notice shall be rendered forthwith if the pleadings, depositions and admissions on file, *together with the affidavits,* show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

As stated earlier in this opinion, the vice president of the appellant corporation admitted in his affidavit that appellant relabeled the condemned articles of food without supervision by a representative of the Federal Security Agency. This proscribed relabeling was in direct contravention of the decree of the district court and of the provisions of the statute and the conditions of the performance bond. Moreover, the charge in the affidavit of the United States Attorney that a considerable number of cases of the misbranded food articles had been reshipped in interstate commerce was not denied by appellant. Liability on the bond therefore attached on uncontroverted affidavits, and summary judgment was properly entered under Civil Procedure Rule 56.

It should be observed that the attitude of the Federal Security Agency in not send-

ing its representative to supervise the re-labeling of appellant's seized and condemned food articles was not cooperative and is not to be commended. The course pursued by the agency appears to have been either arbitrary or neglectful, but this afforded appellant no right to violate the law. The appellant's appropriate course would have been to move the district court for an order directing the Federal Agency to perform forthwith its function under the decree. The aid of the court was not thus invoked. To the contrary, appellant deliberately violated the court's order by its own admission.

The order of the district court of June 28, 1943, is affirmed.